**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 6, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JAMES M. EASTMAN,

      Plaintiff,

and

R. MICHELE RUSSELL, as Trustee
of the Bankruptcy Estate of Wayne D.
Gardner,

      Plaintiff/Intervenor,

and

WAYNE D. GARDNER,

      Plaintiff-Appellant,

v.

UNION PACIFIC RAILROAD
COMPANY, a Delaware corporation;
RENZENBERGER, INC., a Kansas
corporation; MILTON W. MARSHALL;
ELLIE T. TAYLOR; RADEL FRYE;
WANDA FRYE; MACY'S TRUCK
REPAIR, INC., a Wyoming corporation,

      Defendants-Appellees,

and

OLEG PEKUN;
MJ TRANSPORTATION, INC.,

No. 05-8106

an Illinois corporation,

Defendants.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 03-CV-185-D)**

---

Donald J. Sullivan, Sullivan Law Offices, P.C., Cheyenne, Wyoming, for Plaintiff-Appellant.

Kevin Scott Taylor, Snell & Wilmer L.L.P. (Holly R. Shilliday, Snell & Wilmer L.L.P., Denver, Colorado, George Powers and Isaac Sutphin, Sundalh, Powers, Kapp & Martin, Cheyenne, Wyoming, Richard A. Mincer and Robert C. Jarosh, Hirst & Applegate, Cheyenne, Wyoming, and Marvin L. Tyler and William B. Payne, Bussart, West & Tyler, P.C., Rock Springs, Wyoming, with him on the brief) Denver, Colorado, for Defendants-Appellees.

---

Before **HENRY** and **BALDOCK**, Circuit Judges, and **MARTEN**, District Judge.[*]

---

**BALDOCK**, Circuit Judge.

---

In this appeal we must decide whether the district court properly exercised its discretion in holding Plaintiff Wayne Gardner is judicially estopped from pursuing his personal injury claims against Defendants because he failed to disclose his pending claims to the bankruptcy court in the context of his chapter 7 bankruptcy. Our jurisdiction arises under 28 U.S.C. § 1291. We conclude the district court properly

---

[*] The Honorable J. Thomas Marten, United States District Judge for the District of Kansas, sitting by designation.

2

exercised its discretion, and affirm.

I.

Gardner was injured in an auto accident while in the employ of Defendant Union Pacific Railroad (UPRR). Gardner, represented by a personal injury attorney, filed an action (along with a coworker) in federal district court for damages in September 2003 against UPRR pursuant to the Federal Employers' Liability Act. See 45 U.S.C. §§ 51-60. He alleged Wyoming state law negligence claims against the remaining Defendants pursuant to the supplemental jurisdiction statute. See 28 U.S.C. § 1367. With his personal injury claims pending, Gardner (and his wife) retained a bankruptcy attorney and in May 2004 filed a voluntary chapter 7 bankruptcy petition. Gardner did not notify his personal injury attorney of the bankruptcy.

The bankruptcy petition, which Gardner signed under penalty of perjury, failed to disclose his pending lawsuit as a potential asset of the estate. By signing the petition, Gardner verified he had read the petition, schedules, and statement of financial affairs, and the information contained therein was true and correct. On schedule B relating to personal property, Gardner checked "none" as to item 20. Item 20 required Gardner to disclose "[o]ther contingent and unliquidated claims of every nature[.]" Item 4 on his statement of financial affairs required Gardner to "[l]ist all suits and administrative proceedings to which the debtor is or was a party" within the preceding year. Gardner listed two collection suits. Conspicuously absent from the list was Gardner's pending personal injury lawsuit against Defendants.

3

At the § 341 meeting of creditors in June 2004, Gardner unequivocally responded "no" when the trustee asked him if he had a personal injury suit pending. When given a second chance to set the record straight, Gardner failed to do so. Instead, Gardner let his bankruptcy attorney do the talking:

Trustee: Do either of you have a personal injury suit pending?
Gardner: No.
Trustee: Have you been in an accident, or anything like that?
Gardner: Ya, I was in an accident.
Attorney: On work?
Gardner: On work.
Trustee: Ok. So, it would be Workers' Comp?
Attorney: It's not Workers' Comp, per se, because its on the railroad and they have a different.
Trustee: Oh, and they have their own little world.
Attorney: Yes, yes. . . . [My clients] know exactly what you mean when you say their own little world, because it's a real mess. They're not getting him any hearing aids until the whole thing's all completely done. I mean, they won't do medical things for him in the meantime.
Trustee: So, you just continue to hang out there, huh?
Attorney: Ya.
Trustee: Are there any creditors here for the Gardners? I don't see that there is anything to administer. I am going to close this as a "No Asset" case. This 341 is completed.

In August 2004, the bankruptcy court entered an order granting Gardner a discharge under chapter 7 of the bankruptcy code. Neither the district court nor counsel involved in Gardner's personal injury suit had yet to learn of his bankruptcy.

Nearly a year later, Gardner's personal injury attorney became aware of his bankruptcy while performing a routine court search under Gardner's name. Counsel

4

promptly notified the bankruptcy trustee, and in July 2005, the trustee moved to reopen the chapter 7 bankruptcy case and list Gardner's pending lawsuit as an asset of the estate. According to the trustee's motion, "[t]he debtors testified at the § 341 Meeting of Creditors that there was a workers' compensation action for Mr. Gardner that was considered to be exempt." Subsequently, "the Trustee was notified of the pending personal injury action regarding Mr. Gardner that was a Rail Road Workers' Compensation action which is not exempt."[1] The bankruptcy court entered an order reopening the case the next day.

At a pretrial hearing before the district court the next week, Gardner's personal injury attorney informed the court and defense counsel that he recently discovered Gardner had filed for bankruptcy and received a discharge during the pendency of the personal injury action. After the trustee unsuccessfully attempted to sell the lawsuit to Gardner for the benefit of his creditors, the court granted the trustee leave to intervene and substituted the trustee as Plaintiff and real-party-in-interest in the personal injury action. See Fed. R. Civ. P. 17(a). Defendants shortly thereafter moved for summary judgment against both Gardner and the trustee based on the equitable defense of judicial estoppel.

Applying the principles set forth in New Hampshire v. Maine, 532 U.S. 742 (2001), the district court concluded Gardner and the trustee were estopped from pursuing

---

[1] Under Wyoming law, workers' compensation claims do not constitute property of the bankruptcy estate. See Wyo. Stat. Ann. §§ 1-20-109; 27-14-702.

personal injury claims against Defendants. In a thorough written order, the district court explained: "Mr. Gardner took an inconsistent position before the Bankruptcy Court. He convinced the Bankruptcy Court to rely on his inconsistent position. And he gained an unfair advantage, or substantial benefit, by obtaining the discharge of his debts in a 'no asset' bankruptcy." Eastman v. Union Pacific Railroad Co., No. 03-CV-185-D, order at 14 (D. Wyo., filed Aug. 30, 2005) (unpublished). The court further concluded, based on the undisputed historical facts, that "Gardner had a motive to conceal his personal injury claim from the Bankruptcy Court and that his failure to disclose was not inadvertent:"

> What the Court finds most telling . . . is the fact that when given the opportunity at the meeting of creditors to reveal the pending litigation, Mr. Gardner did not disclose his personal injury action. First, he explicitly denied having a personal injury action pending. Second, his attorney represented that the claim was not workers' compensation "per se," but indicated that any claim was related to an on-the-job injury, leading the Trustee to believe that the claim was similar in nature to a workers' compensation claim. Third, Mr. Gardner's attorney referred to UPRR's failure to provide hearing aids to Mr. Gardner, misrepresenting the extent of the claims involved. Mr. Gardner had an affirmative duty to speak up and let the trustee know the nature of his lawsuit against UPRR as well as eight other defendants. . . .

Id. at 16-17. Careful not to suggest Gardner or his bankruptcy attorney intentionally lied to the bankruptcy court in an effort to conceal assets, the district court nonetheless refused to "take the benign view that the failure to disclose was inadvertent:"

> If the only defendant in the personal injury action had been Mr. Gardner's employer, UPRR, the Court might have been swayed that Mr. Gardner attempted to disclose the lawsuit. Certainly, there was a discussion in the meeting of creditors of a work related injury. As it stands, however, no reference was ever made, however slight, to the eight other defendants involved in the personal injury action, six of whom are not even

6

tangentially related to UPRR. The Bankruptcy Court was misled, and it is incumbent upon this Court to protect the integrity of the judicial process. . . .

Id. at 18. This appeal followed.[2]

## II.

At the outset we note that shortly prior to the district court's decision, the trustee settled the personal injury action with two named Defendants who are not before us on appeal. This ultimately provided the bankruptcy estate with sufficient assets to pay all allowable creditors' claims. With Gardner' debts satisfied, the bankruptcy court entered an order directing the trustee to abandon the estate's interest in this appeal, and the trustee has done so. Accordingly, we grant the parties' pending motions to substitute Plaintiff Gardner in this appeal as the real-party-in-interest in place of the bankruptcy trustee, amend the caption of this appeal to reflect such change, and proceed. See Fed. R. App. P. 43(a).[3]

---

[2] Although the trustee filed a notice of appeal prior to the district court's entry of final judgment, Fed. R. App. P. 4(a)(2) generally allows a premature notice of appeal filed from a nonfinal order to ripen upon subsequent entry of final judgment. See Lewis v. B.F. Goodrich Co., 850 F.2d 641, 645 (10th Cir. 1988). The general rule is subject to certain limitations inapplicable here. See Reed v. McKune, 153 Fed. Appx. 511, 513-14 (10th Cir. 2005) (discussing rule's limitations).

[3] Quite likely the district court's application of judicial estoppel against the trustee was inappropriate, at least to the extent Gardner's personal injury claims were necessary to satisfy his debts. See Parker v. Wendy's Int'l., Inc., 365 F.3d 1268, 1271-72 (11th Cir. 2004). This is because at the time of the court's decision, the trustee as the real-party-in-interest had not engaged in contradictory litigation tactics. See Cannon-Stokes v. Potter, 453 F.3d 446, 448 (7th Cir. 2006) ("Judicial estoppel is an equitable doctrine, and it is not equitable to employ it to injure creditors who are themselves victims of the debtor's

(continued...)

7

This appeal arises in the context of summary judgment, so we view the facts and all reasonable inferences to be drawn therefrom in a light most favorable to the nonmoving party, *i.e.*, Gardner.  See Roberts v. Barreras, 484 F.3d 1236, 1239 (10th Cir. 2007).  Assuming the district court has properly characterized the facts in light of the applicable standard, we then review its decision to judicially estop Gardner from pursuing his personal injury claims only for an abuse of discretion.  See New Hampshire, 532 U.S. at 750.  A court abuses its discretion only "when it makes a clear error of judgment, exceeds the bounds of permissible choice, or when its decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment."  United States v. Nickl, 427 F.3d 1286, 1300 (10th Cir. 2005) (internal quotations and brackets omitted).

Whether we apply state or federal estoppel principles in our analysis is another matter.  Certainly we apply federal principles to Gardner's federal claims.  See Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002).  We similarly believe Gardner's pendent state law claims arising under Wyoming law must be analyzed in the context of federal principles.  The doctrine of federal judicial estoppel is foremost designed to protect the federal judicial process.  See New Hampshire, 532 U.S. at 749.

---

[3](...continued)

deceit.").  But because Gardner's creditors have been paid and the trustee, on behalf of the estate, has abandoned Gardner's personal injury claims, Gardner's creditors no longer have an interest in such claims.  With those claims once again in Gardner's hands, judicial estoppel becomes an appropriate subject for our consideration.  Gardner's motion asking us to remand this matter to the district court for further consideration, absent the trustee, is denied.

8

Gardner's bankruptcy is a federal matter. Gardner filed his personal injury action in federal district court. That is the court where the judicial estoppel defense arises. That is the court interested in protecting its process. Simply put, a federal court's ability to protect itself from manipulation should not depend upon the law of the state under which some or all of the claims arise. See Rissetto v. Plumbers and Steamfitters Local 343, 94 F.3d 597, 602-04 (9th Cir. 1996) (explaining *Erie* policies must yield to countervailing federal policies in the application of judicial estoppel); accord Ogden Martin Sys. v. Whiting Corp., 179 F.3d 523, 527 n.1 (7th Cir. 1999); Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 n.4 (6th Cir. 1982); Allen v. Zurich Ins. Co., 667 F.2d 1162, 1167 n.4 (4th Cir. 1982).

A.

The Supreme Court first recognized the doctrine of judicial estoppel in New Hampshire v. Maine. The Court explained that the doctrine's "purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire, 532 U.S. at 749-50 (internal citation and quotations omitted). In other words, "the rule is intended to prevent improper use of judicial machinery." Id. at 750 (internal quotations omitted). While the Court recognized the circumstances under which a court might invoke judicial estoppel will vary, three factors "typically inform the decision whether to apply the doctrine in a particular case." Id. First, a party's subsequent position must be "'clearly inconsistent'" with its former position. Id. Next, a court should inquire whether the

9

suspect party succeeded in persuading a court to accept that party's former position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the *perception* that either the first or the second court was misled[.]" Id. (emphasis added) (internal quotations omitted). Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped. Id. at 751.[4]

B.

On appeal, Gardner takes aim at the inferences the district court drew from the historical facts. Contrary to the district court's characterization of the facts, Gardner asserts his failure to disclose in no uncertain terms his pending personal injury action to the bankruptcy court resulted from "[m]istake, inadvertence, confusion, lack of understanding, lack of legal sophistication, and the like[.]" Gardner places the blame on his bankruptcy attorney whom Gardner claims he informed of the pending lawsuit early in the bankruptcy proceedings: "Mr. Gardner is an unsophisticated layman, unschooled in legal niceties, happily working on the railroad and knowing only that he got hurt 'on work,' relying on the educated professionals around him to file the right papers." In short, Gardner claims ignorance.

---

[4] Although we had resisted application of the doctrine of federal judicial estoppel for years prior, in Johnson v. Lindon City Corp., 405 F.3d 1065, 1068-69 (10th Cir. 2005), we first applied the doctrine consistent with the Supreme Court's directive in New Hampshire.

10

1.

To be sure, in <u>New Hampshire</u>, 532 U.S. at 753, the Supreme Court did "not question that it *may* be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." (emphasis added) (internal quotations omitted). Unfortunately for Gardner, our sister circuits, for what seem to us sound reasons, have not been overly receptive to debtors' attempts to recover on claims about which they "inadvertently or mistakenly" forgot to inform the bankruptcy court. Instead, courts addressing a debtor's failure to satisfy the legal duty of full disclosure to the bankruptcy court have deemed such failure inadvertent or mistaken "only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." <u>In re Coastal Plains, Inc.</u>, 179 F.3d 197, 210 (5th Cir. 1999); <u>accord</u> <u>Browning v. Levy</u>, 283 F.3d 761, 776 (6th Cir. 2002); <u>Barger v. City of Cartersville</u>, 348 F.3d 1289, 1294 (11th Cir. 2003). Where a debtor has both knowledge of the claims and a motive to conceal them, courts routinely, albeit at times *sub silentio*, infer deliberate manipulation. <u>See</u> <u>Burnes</u>, 291 F.3d at 1287 ("[S]everal circuits, in considering the particular issue of judicial estoppel and the omission of assets in a bankruptcy case, have concluded that deliberate or intentional manipulation can be inferred from the record.").

The most recent example is the Seventh Circuit's decision in <u>Cannon-Stokes v. Potter</u>, 453 F.3d 446 (7th Cir. 2006). In <u>Cannon-Stokes</u>, the court held a debtor in bankruptcy who denies owning a legal claim cannot realize on the previously concealed claim after the bankruptcy ends. The court was unpersuaded by an affidavit the debtor

11

submitted asserting her failure to disclose her discrimination claim against her employer was the result of good faith reliance on legal advice. Noting a client is bound by the acts of her attorney and the remedy for bad legal advice rests in malpractice litigation, the court explained the signature on the bankruptcy schedule was the debtor's, the representation she made therein was false, and she received the benefit of a discharge without seeking to make her creditors whole. Id. at 449; accord Barger, 348 F.3d at 1295 (recognizing that although the debtor informed his bankruptcy attorney about his pending lawsuit, "the attorney's omission is no panacea") (citing Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962)).

The First Circuit delivered a similarly terse message to the debtor in Payless Wholesale Distrib., Inc. v. Alberto Culver (P.R.) Inc., 989 F.2d 570 (1st Cir. 1993). In Payless, the court referred to the bankruptcy debtor's failure to disclose a pending legal claim as "a palpable fraud that the court will not tolerate, even passively." Id. at 571. Seeking to preserve the reliability of bankruptcy disclosures for the benefit of creditors, the court reasoned the debtor "having obtained judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis. . . . Indeed, defendants may have a windfall. However, [the failure to disclose] is an unacceptable abuse of judicial proceedings." Id.; see also Burnes, 291 F.3d at 1286 (explaining that because judicial estoppel is designed to protect the judicial process rather than litigants, a party's detrimental reliance on a debtor's inconsistent position is unnecessary) (citing cases).

12

Yet another example is the Fifth Circuit's decision in Jethroe v. Omnova

Solutions, Inc., 412 F.3d 598 (5th Cir. 2005). In that case, the court rejected the debtor's

argument that her failure to inform the bankruptcy court of her discrimination claims was

inadvertent because her bankruptcy attorney told her such claims were "irrelevant." Id. at

601. The court explained that to establish inadvertence, the debtor had to prove "either

that she did not know of the inconsistent position or that she had no motive to conceal it

from the court." Id. at 600-01. The court opined that "[j]udicial estoppel is particularly

appropriate where, as here, a party fails to disclose an asset to a bankruptcy court, but

then pursues a claim in a separate tribunal based on that undisclosed asset." Id. at 600;

accord Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 783 (9th Cir. 2001) ("In

the bankruptcy context, a party is judicially estopped from asserting a cause of action not

raised in a reorganization plan or otherwise mentioned in the debtor's schedules or

disclosure statements.") (citing cases).

2.

Given the overwhelming weight of authority, the district court's decision to

employ judicial estoppel against Gardner under the circumstances presented is

undoubtedly sound. The sole circuit court case on which Gardner relies to any extent is

not to the contrary. In Eubanks v. CBSK Fin. Group, Inc., 385 F.3d 894 (6th Cir. 2004),

the Sixth Circuit concluded a debtor's omission of a lender-liability claim from his initial

bankruptcy schedule was indeed the result of mistake or inadvertence. The court

explained that at the meeting of creditors, the debtor "orally informed" the trustee of the

13

claim he was in the process of filing against the lender. The trustee then "orally instructed" the debtor's counsel to forward to him all documents regarding the claim. Counsel forwarded the documentation to the trustee two days later. See id. at 895-96. The court concluded the debtor "put the court and the trustee on notice through correspondence, motions, and status conference requests," thus supporting the court's view that the claim's omission on the schedules was inadvertent. Id. at 899.

Those are not the facts here. Nowhere on the petition, schedules, or statements Gardner filed with the bankruptcy court did he disclose his pending personal injury action. Then, unlike Eubanks, when the trustee specifically asked Gardner whether he had a personal injury suit pending, he unequivocally responded "no." As the district court ably explained, the trustee's subsequent conversation with Gardner's attorney only served to diffuse the situation and divert attention from the extent of Gardner's pending claims. Gardner's attorney, perhaps unaware of the situation, led the trustee to believe any claim Gardner had against UPRR involved relatively minor medical damages, *i.e.*, things like hearing aids. See Barger, 348 F.3d at 1296 (explaining that instead of fully disclosing the nature of her pending suit, the debtor "dissembled to the trustee and indicated that her discrimination claim had no monetary value").

Even more egregious and equally as telling was Gardner's failure to even mention UPRR's eight co-defendants, whom he also had sued, or recognize in any way his state law negligence claims against them. The bankruptcy code imposes a duty upon a debtor to disclose all assets, including contingent and unliquidated claims. See 11 U.S.C.

14

§521(1). That duty encompasses disclosure of all legal claims and causes of action, pending or potential, which a debtor might have. See In re Coastal Plains, 179 F.3d at 208. The statement of financial affairs, to which § 521(1) refers, specifically requires a debtor to disclose his involvement in pending lawsuits. Gardner appears to have understood this latter requirement as illustrated by his listing of two collection suits against him. In short, we think it inconceivable that Gardner, at the time he filed for bankruptcy, did not understand he had a personal injury action pending for nine months prior from which he stood to benefit financially. That he well knew of his pending lawsuit and simply did not disclose it to the bankruptcy court is the only reasonable inference to be drawn from the evidence. After all, Gardner had been seriously injured in an auto accident and sued his employer along with eight other co-defendants for thousands of dollars. "It is impossible to believe that such a sizable claim . . . could have been overlooked when [the debtor] was filling in the bankruptcy schedules." Cannon-Stokes, 453 F.3d at 448.

Gardner too had a motive to sweep his personal injury action "under the rug" so he could obtain a discharge free and clear of his creditors. The ever present motive to conceal legal claims and reap the financial rewards undoubtedly is why so many of the cases applying judicial estoppel involve debtors-turned-plaintiffs who have failed to disclose such claims in bankruptcy. The doctrine of judicial estoppel serves to offset such motive, inducing debtors to be completely truthful in their bankruptcy disclosures. See id. We think Gardner's case is indistinguishable from the overwhelming majority of

15

cases where debtors, who have failed to disclose legal claims to the bankruptcy court without credible evidence of why they did so, have been judicially estopped from pursuing such claims subsequent to discharge. A large portion of debtors who file for chapter 7 bankruptcy surely are as "unsophisticated" and "unschooled" as Gardner, yet have little difficulty fully disclosing their financial condition to the bankruptcy court. Gardner's assertion that he simply did not know better and his attorney "blew it" is insufficient to withstand application of the doctrine. See id. at 447-49; Jethroe, 412 F.3d at 600-01; Barger, 348 F.3d at 1294-96.

3.

A debtor, once he files for bankruptcy, disrupts the flow of commerce and promptly benefits from an automatic stay. See 11 U.S.C. § 362. The debtor then receives the ultimate benefit of bankruptcy when he receives a discharge. A chapter 7 discharge, like Gardner received from the bankruptcy court, relieves the debtor of any obligation to pay outstanding debts. See id. § 727(b). This in the aggregate drives up interest rates and harms creditworthy borrowers. See Cannon-Stokes, 453 F.3d at 448. In exchange for these benefits, the bankruptcy code required only that Gardner fully and accurately disclose his financial status. Such disclosure was absent in this matter for no satisfactory reason. Instead, Gardner took "clearly inconsistent" positions in the bankruptcy and district courts. See New Hampshire, 532 U.S. at 750. The obvious "perception" is that Gardner misled the bankruptcy court. See id. And Gardner received the benefit of a discharge without ever having disclosed his pending personal injury action against

16

Defendants, thus providing him an unfair advantage over his creditors. See id. The district court's discretionary application of judicial estoppel was appropriate under such circumstances.

That Gardner's bankruptcy was reopened and his creditors were made whole once his omission became known is inconsequential. A discharge in bankruptcy is sufficient to establish a basis for judicial estoppel, "even if the discharge is later vacated." Hamilton, 270 F.3d at 784. Allowing Gardner to "back up" and benefit from the reopening of his bankruptcy only after his omission had been exposed would "suggest[] that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets." Burnes, 291 F.3d at 1288. The judgment of the district court is

AFFIRMED.