**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 9, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

AUTOS, INC.,

      Defendant-Appellant,

v.

KRISTIN KAE GOWIN,

      Plaintiff-Appellee.

No. 05-3415

(D. of Kan.)

(D.C. No. 03-CV-4116-SAC)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Judge, **TYMKOVICH**, and **HOLMES**, Circuit Judges.

The question presented in this appeal is whether Kristin Kae Gowin, a

debtor in Chapter 13 bankruptcy, may pursue legal claims against a car

dealership, Autos, Inc. ("Autos"), despite her knowing failure to schedule the

claims in her bankruptcy plan. Autos contends that Gowin cannot assert the legal

claims under several statutory and equitable theories. We conclude that, although

a Chapter 13 debtor has standing to litigate claims on behalf of the bankruptcy

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

estate, the principles of judicial estoppel militate against allowing Gowin to proceed in this case.

Exercising jurisdiction pursuant to 28 U.S.C. §§ 158(a) and (d), we affirm the district court's finding of judicial estoppel, and remand for dismissal of the case.

## I. Standard of Review

In reviewing a bankruptcy court decision under 28 U.S.C. §§ 158(a) and (d), we apply the same standards of review that govern appellate review in other cases. Thus, we review the bankruptcy court's legal determinations de novo and its factual findings for clear error. *Jenkins v. Hodes (In re Hodes)*, 402 F.3d 1005, 1008 (10th Cir. 2005).

## II. Background

*A. Factual Background*

On December 11, 1998, Gowin bought a used 1985 Toyota Camry from Autos on credit for $2,995 plus Kansas sales tax of $184.19 and a finance charge of $290.81. The transaction was completed with three documents—a sales contract, a financing agreement, and a promissory note. According to the financing agreement, Gowin was required to make a $600 down payment on the car. Instead, Gowin paid $200 down and signed a promissory note for the outstanding balance of $400. The note required Gowin to pay $200 on December 17, 1998 and $200 on December 24, 1998. In addition, the note provided a space

for an interest rate, which was left blank. Gowin never made these payments, nor any other beyond the $200 she paid on the date of purchase.

On the date of sale, Autos did not have title documents for the car but appears to have received them on or around December 22, 1998. At that time, Autos completed the reassignment portion of the title documents indicating the car had been sold to Gowin. Autos did not, however, physically deliver these title documents to Gowin.

According to an Autos's salesman, he telephoned Gowin after she missed the first or second payment on the promissory note. He claimed that Gowin told him she could not pay for the car, wanted out of the contract, and would return the car to Autos. The salesman said that he verbally agreed to this arrangement, but there are no written notes corroborating the conversation.

The salesman further testified that when Gowin did not return the car, Autos sent out agents to look for it. On or around January 2, 1999, an Autos's agent found the car parked a few blocks from Gowin's home address. According to the agent, the car was unlocked, had a flat tire, and the windows were rolled down despite the winter weather. The agent said the car appeared to have been abandoned. Gowin did not dispute any of the testimony regarding the appearance or location of the car. After finding the car, the agent repossessed it and delivered it back to Autos. Autos admits that it did not give Gowin notice of its

intent to repossess the car or apprise her of her potential rights to cure her default under state law.

Gowin's version of events was slightly different. She denied ever offering to surrender the car to Autos, alleging that the only conversation she had with Autos after the sale was to seek some minor repairs for the car. Gowin did testify, however, that she was dissatisfied with the car and had no desire to keep it by the time she filed for bankruptcy several weeks later. She claims to have last seen the car on January 1, 1999, parked with a flat tire near her boyfriend's home (located near the address she provided Autos). Gowin admitted she noticed the car missing from that location at some point before she filed for bankruptcy but did not report it to authorities.

On January 5, 1999, three weeks after she purchased the car from Autos, Gowin filed for relief under Chapter 13 of the Bankruptcy Code. Her plan stated an intent to surrender the car to Autos upon confirmation. The plan did not disclose any potential claims against Autos as assets of the bankruptcy estate.

Several weeks later, Autos sold the car to a third-party. Autos admits it neither provided notice of the sale to Gowin nor accounted to her for its proceeds.

*B. The Bankruptcy Proceedings*

The bankruptcy court confirmed Gowin's Chapter 13 plan on April 9, 1999. Eight months later, in December 1999, Gowin filed suit against Autos.

While her complaint alleged both state and federal causes of action, Gowin ultimately proceeded only on her state law claims, seeking relief under the Kansas Uniform Consumer Credit Code (U3C), the Kansas Uniform Commercial Code (UCC), and the Kansas Consumer Protection Act. She also raised one claim of common law conversion.

The bankruptcy court found for Gowin on all claims except one under the Kansas Consumer Protection Act. It also rejected Autos's affirmative defense that Gowin's claims should be barred by her failure to disclose them in her bankruptcy filings, concluding that Gowin did not know her car had been repossessed by Autos when she filed for bankruptcy and, thus, she had no claims to report. The court ordered Autos to pay a judgment consisting of the following: (1) $300 plus costs and attorney fees for the U3C violations surrounding the promissory note; (2) $581.62 plus costs and attorney fees for the failure to send notice of the right to cure before repossessing the car; and (3) $590.31 for violations of the UCC.

Both parties cross-appealed to the district court. Gowin appealed the lack of damages for her notice and common law conversion claims, while Autos appealed each of the individual determinations of liability against it and also reasserted the affirmative defense that Gowin could not litigate claims she failed to disclose in her confirmation plan.

After de novo review, the district court concluded that Gowin's failure to disclose the claim against Autos was intentional and undercut the operation of her bankruptcy proceedings. The district court found all of the elements of the equitable doctrine of judicial estoppel were met, but instead of dismissing the case, ordered the entirety of the judgment to be awarded to the bankruptcy estate.[1] Accordingly, the case was remanded to the bankruptcy court for distribution of damages.

The district court subsequently denied Autos's motion to alter or amend the judgment. Autos timely appealed to this court.[2]

---

[1]

The court finds that the better remedy in this case is to require Gowin to distribute any and all damages recovered in the adversary action among the creditors of her estate, denying her a personal recovery. This will preclude Autos from reaping a windfall and will keep Gowin from profiting from her failure to disclose her claim to creditors.

Dist. Ct. Op. at 15.

[2] In light of the remand provision, Gowin contends that the district court's order was not a final appealable order for purposes of our jurisdiction. We conclude jurisdiction is proper pursuant to the rule announced in *Masunaga v. Stoltenberg (In re Rex Montis Silver Co.)*, 87 F.3d 435 (10th Cir. 1996): A district court order that remands for "significant further proceedings" requiring the "exercise of considerable judicial discretion" is not a final, appealable order. In contrast, a remand order that requires the bankruptcy court to "perform . . . a mere ministerial duty" is considered final for purposes of our jurisdiction. *Id*. at 438.

In this case, the bankruptcy court had already issued detailed findings of fact and conclusions of law. The district court remanded for the limited issue of administering the damage award, already calculated by the bankruptcy court, among the creditors. We conclude that the task of distributing damages already

(continued...)

-6-

### III. Discussion

Our disposition of this appeal requires us to consider two issues: (1) whether Gowin had standing in the first place to pursue claims against Autos in the bankruptcy court and (2) whether the doctrine of judicial estoppel applies to the unique facts of this case.

*A. Chapter 13 Debtor May Pursue Claims on Behalf of the Estate*

As a threshold matter, Autos urges us to reverse the bankruptcy court on the ground that Gowin lacked standing to pursue her claim in the first instance.[3] In support of its argument, Autos relies on a district court case from Missouri as authority that only the bankruptcy trustee is authorized to pursue claims on behalf of the estate:

> Causes of action which belong to the debtor . . . are estate property. Accordingly, the bankruptcy trustee steps into the shoes of the debtor for purposes of asserting or maintaining the debtor's causes of action. *Therefore, unless the trustee abandons the property, only the trustee is authorized to pursue a cause of action.*

*Richardson v. United Parcel Service*, 195 B.R. 737, 739 (E.D. Mo. 1996) (emphasis added) (internal citations omitted).

---

[2](...continued)
calculated is a mere "ministerial task" rather than one requiring "considerable judicial discretion."

[3] While Gowin originally filed the adversarial action for her own benefit, she has abandoned this position on appeal, claiming only that she seeks damages on behalf of the bankruptcy estate.

We find this authority unpersuasive. A number of circuit cases have concluded that a Chapter 13 debtor may pursue claims on behalf of the estate, finding the debtor can step into the shoes of the trustee for purposes of the litigation. *See, e.g.*, *Crosby v. Monroe County*, 394 F.3d 1328, 1331 n.2 (11th Cir. 2004) ("In Chapter 13 cases where the debtor is the party plaintiff, courts recognize that the Chapter 13 debtor may sue and be sued.") (internal citation omitted); *Cable v. Ivy Tech State College*, 200 F.3d 467, 472–73 (7th Cir. 1999) (standing exists because Chapter 13 grants debtor possession of all estate property, including legal claims, and "[i]t would frustrate the essential purpose of [the Chapter] to grant the debtor possession of the chose in action yet prohibit him from pursuing it for the benefit [of] the estate"); *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515–516 (2d Cir. 1998) (interpreting legislative history to conclude Chapter 13 debtor has standing); *Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1210 n.2 (3d Cir. 1991) (same).

The case for standing is particularly compelling here, where Gowin is pursuing a claim ostensibly for the benefit of the estate with the knowledge and consent of the trustee. The Bankruptcy Code allows a Chapter 13 debtor to step into the shoes of the trustee with respect to a number of functions. *See* 11 U.S.C. § 1303 ("Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under

[certain sections] of this title.").  In addition, Rule 6009 of the Federal Rules of Bankruptcy Procedure provides:

> With or without court approval, the trustee *or debtor in possession* may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.

(emphasis added).  Since a Chapter 13 debtor is a debtor in possession, *see* 11 U.S.C. § 1306, Rule 6009 confirms our view that Gowin has standing to pursue the legal claims asserted here.

*B.  Judicial Estoppel*

The district court held that all of the elements of judicial estoppel were met in this case, but declined to dismiss the appeal.  It concluded that the small judgment against Autos could benefit creditors notwithstanding the large resources expended to date in litigating the claims and administering the previously confirmed plan.  The court also believed that a contrary result would result in a "windfall" to Autos.

"Judicial estoppel bars a party from adopting inconsistent positions in the same or related litigation."  *Rascon v. U.S. West Commc'ns, Inc.*, 143 F.3d 1324, 1330 (10th Cir. 1998) (internal quotation and citation omitted).  It is a discretionary remedy courts use in order "to prevent improper use of judicial machinery."  *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation and citation omitted).

We recently recognized the vitality of the doctrine in the specific context of bankruptcy proceedings. In *Eastman v. Union Pacific Railroad Co.*, No. 05-8106, 2007 WL 1954031 (10th Cir. July 6, 2007), we denied discharge to a Chapter 7 debtor who swept his personal injury suit "under the rug" before the bankruptcy court only to assert it later in the district court. *Id.* at *7. We concluded the debtor could not attain discharge, "the ultimate benefit of bankruptcy," in the face of such deliberate nondisclosure. *Id.* Numerous courts have agreed that the omission of a cause of action as an asset in bankruptcy provides an appropriate basis for imposing judicial estoppel. *See*, *e.g.*, *Cannon-Stokes v. Potter*, 453 F.3d 446 (7th Cir. 2006); *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598 (5th Cir. 2005); *Barger v. City of Cartersville*, 348 F.3d 1289 (11th Cir. 2003); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001); *Payless Wholesale Distribs., Inc. v. Alberto Culver, Inc.*, 989 F.2d 570 (1st Cir. 1993); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988).

To determine whether judicial estoppel applies to this case, we must consider the factors articulated by our circuit in *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005). Recognizing the doctrine is "probably not reducible to any general formulation of principle," *id.* (*quoting New Hampshire*, 532 U.S. at 750), we identified at least three factors that should inform the analysis:

(1) The party against whom judicial estoppel is to be invoked seeks to rely on a position that is clearly inconsistent with its earlier position;

(2) The party has succeeded in persuading a court to accept its earlier position, such that judicial acceptance of an inconsistent position would create the impression that either the first or the second court was misled; and

(3) The party seeking to assert the inconsistent position would derive an unfair advantage *or* impose an unfair detriment on the opposing party if not estopped.

*Id.*; s*ee also Eastman*, 2007 WL 1954031 at *4. All three criteria are satisfied in this case.

First, Gowin seeks to rely on a position, that she has legal claims against Autos, that is inconsistent with the position she took before her bankruptcy plan was confirmed, that she lacked any such claims. As mentioned above, a debtor's assertion of legal claims not disclosed in earlier bankruptcy proceedings constitutes an assumption of inconsistent positions. *See Eastman*, 2007 WL 1954031 at *6. And while Gowin's nondisclosure might have been mitigated by evidence that she discovered her claims against Autos after plan confirmation, the district court found to the contrary.[4] Gowin does not challenge that conclusion on

---

[4] The most significant fact evidencing Gowin's knowledge that Autos had repossessed her car well before her plan was confirmed is the conflict arising out of her stated intent to surrender the car to Autos, her knowledge that it was missing, and her failure to report the car missing at any time in the intervening months.

appeal. It is undisputed she knew her car was repossessed by Autos well before her plan was confirmed, yet she never moved to amend her schedules.

The second element of judicial estoppel is also met. Gowin convinced the bankruptcy court to confirm her Chapter 13 plan without disclosing her claims against Autos, yet she now seeks to litigate those same claims. By failing to disclose her claims as an asset on her schedules, Gowin actively deceived her creditors and misled the bankruptcy court about the scope of the estate. The integrity of bankruptcy proceedings is compromised if the bankruptcy court cannot rely on the information disclosed by a debtor, or if substantial known assets come to light after the court has confirmed a plan of distribution. *See*, *e.g.*, *Payless*, 989 F.2d at 571 (holding that failure to disclose a pending legal claim is "a palpable fraud that the court will not tolerate, even passively"); *Oneida*, 848 F.2d at 417 ("The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court.").

The final factor of judicial estoppel is met also. Gowin's tactic would both derive an unfair benefit and impose an unfair detriment. Had it succeeded, Gowin's side deal with the trustee (although apparently abandoned on appeal to us but actively asserted at the bankruptcy court and district court levels) would have effectively shielded fifty percent of any potential recovery against Autos from her creditors, bestowing an unfair benefit on Gowin at their expense. *See*, *e.g.*, *USinternetworking, Inc. v. Gen. Growth Mgmt. (In re Usinternetworking,*

*Inc.)*, 310 B.R. at 284 (concluding that prejudice to be considered includes that to creditors and the courts, not just the opposing party). In any event, Autos was surely prejudiced by Gowin's obfuscation. Had it received prompt notice of Gowin's claims by virtue of their inclusion in her bankruptcy petition, Autos could have proposed any number of compromise solutions to bypass this multi-year morass in the federal courts.[5]

*C. Remedy*

We thus agree with the district court that the elements of judicial estoppel have been met in this case. We disagree, however, with the court's proposed remedy. Gowin's nondisclosure prevented the prompt evaluation of her claims against Autos by the trustee and other creditors. Any chance of a timely and cost effective resolution of those claims was compromised as a result. Autos, moreover, was denied an opportunity to settle the claims or to chart a different course with knowledge of Gowin's legal theory. For her part, Gowin abandoned the car to the neighborhood and the weather, and even disclosed in her bankruptcy filings her intention to surrender the car to Autos.

---

[5] While there is some question as to the nature of prejudice suffered by Autos, such a showing will usually be apparent, although not necessarily required. "Because the doctrine [of judicial estoppel] is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary." *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 205 (5th Cir. 1999). Here, the case for judicial estoppel is fortified by the tripartite prejudice Gowin's conduct engendered—to Autos, her creditors, and the judicial system generally.

In light of these facts, and given the disproportionate expenditure of resources in litigation—an adversary proceeding in bankruptcy court, magistrate judge review, district court proceedings, and an appeal to this court—compared with the amount awarded by the district court—less than $1,500 exclusive of costs and fees—we conclude that dismissal is the appropriate outcome.

Accordingly, we reverse that part of the district court's decision.

## IV. Conclusion

Because we agree that the equitable concerns underlying judicial estoppel have been satisfied, we affirm the order of the district court. But we reverse the remedy proposed by the district court. The case is remanded for further proceedings consistent with this order and judgment.

Entered for the Court,

Timothy M. Tymkovich
Circuit Judge