FILED
United States Court of Appeals
Tenth Circuit

May 29, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ROSALIE L. ARDESE,

      Plaintiff-Appellant,

v.

DCT, INCORPORATED,
an Oklahoma corporation,

      Defendant-Appellee.

No. 07-7069
(D.C. No. 06-CV-12-P)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **McKAY**, and **GORSUCH**, Circuit Judges.

---

Rosalie L. Ardese appeals the district court's judgment estopping her from

pursuing certain civil claims against her former employer, DCT, because she

failed to disclose them as assets during her bankruptcy. Because we agree with

the district court that the legal issues in Ms. Ardese's case are materially

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

indistinguishable from those in *Eastman v. Union Pacific Railroad Co.*, 493 F.3d 1151 (10th Cir. 2007), we affirm.

I

Ms. Ardese worked for DCT as a security guard and dispatcher. On January 18, 2005, following her separation from employment, Ms. Ardese filed a charge against DCT with the National Labor Relations Board ("NLRB" or "Board"), alleging her termination violated a collective bargaining agreement between DCT and Local 796 of the International Union, Security, Police and Fire Professionals of America ("Union"). The NLRB deferred the matter to grievance and arbitration procedures outlined in the collective bargaining agreement. In July 2005, the Board determined that no further proceedings were necessary because the Union had withdrawn Ms. Ardese's grievance; for that reason, the NLRB refused to issue a complaint on Ms. Ardese's charge.

Meanwhile, on March 11, 2005, Ms. Ardese filed a charge of discrimination against DCT with the Equal Employment Opportunity Commission ("EEOC" or "Commission"), alleging that DCT discriminated against her by regarding her as disabled. The EEOC dismissed the charge on September 27, 2005. The same day, Ms. Ardese filed an amended charge with the Commission, continuing to claim that DCT discriminated against her by regarding her as disabled, but also adding claims of racial discrimination and retaliation. On December 24, 2005, Ms. Ardese filed a third charge of discrimination against DCT that was identical

to the amended charge except for the removal of her disability discrimination claim. The EEOC dismissed this charge on January 17, 2006. Ms. Ardese was not represented by counsel in the proceedings before the NLRB or the EEOC.

On October 11, 2005, and with the assistance of counsel, Ms. Ardese filed a voluntary petition for discharge in bankruptcy under Chapter 7 of the Bankruptcy Code. The bankruptcy filings required Ms. Ardese to disclose her administrative claims against DCT. For example, Schedule B asked her to list, among other property, "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." Aplee. Supp. App., Vol. I at 74. The Statement of Financial Affairs likewise required her to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately proceeding the filing of this bankruptcy case." *Id*. at 89. Yet nowhere in her bankruptcy court filings did Ms. Ardese reference her administrative claims, and she identified no non-exempt assets that could be administered for the sake of her creditors.

The bankruptcy court discharged Ms. Ardese's debt on January 10, 2006. That very same day Ms. Ardese filed this case in the district court, making claims against DCT, the Union, and a number of individuals. Ms. Ardese's *pro se* complaint alleged, among other claims, sexual harassment, gender and racial discrimination, retaliation, violation of the Americans with Disabilities Act, breach of the collective bargaining agreement, defamation, and breach of the

Union's duty of fair representation. Ms. Ardese subsequently hired an attorney and twice amended her complaint so that it finally brought claims only against DCT, alleging racial and gender discrimination, violations of the Americans with Disabilities Act and Labor Management Relations Act, and violations of state law. The bankruptcy court entered its final decree on January 23, 2006, closing Ms. Ardese's bankruptcy case.

On July 21, 2006, DCT filed a motion to dismiss with the district court, arguing that Ms. Ardese's claims against DCT arose before she filed her bankruptcy petition and therefore the court should dismiss the case because the bankruptcy trustee was the proper party in interest and Ms. Ardese had no standing and, even if she were the proper party in interest, Ms. Ardese should be judicially estopped from pursuing her claims. The district court converted this motion into one for summary judgment.

After receiving DCT's motion, Ms. Ardese reopened her bankruptcy case and disclosed her claims against DCT. Ms. Ardese then added the bankruptcy trustee as a party to the district court action and responded to DCT's motion for summary judgment, arguing that she should be allowed to stay in the case as a party because she had an interest in any money recovered that was beyond what the estate owed to the creditors. The district court granted the motion for summary judgment as to Ms. Ardese's interest on the ground that the trustee was the only proper party in interest.

DCT filed another motion for summary judgment on June 15, 2007, again arguing that the district court should deny recovery on the ground of judicial estoppel. The trustee responded that judicial estoppel was improper because Ms. Ardese had settled with the trustee, paying all her creditors' claims in full and purchasing all right, title, and interest in the lawsuit from the estate.

The district court granted motions subsequently filed by both Ms. Ardese and the trustee, asking the court to replace the trustee, who had abandoned the estate's interest in the lawsuit pursuant to the settlement, with Ms. Ardese as the sole plaintiff. The district court then granted DCT's second motion for summary judgment, concluding that Ms. Ardese was judicially estopped from pursuing her claims because of her failure to apprise the bankruptcy court initially of her claims against DCT, despite her later attempt to cure the omission. Ms. Ardese now appeals this decision.

## II

We review the district court's decision holding Ms. Ardese judicially estopped from pursuing her claims for abuse of discretion. *See Eastman,* 493 F.3d at 1156. A court abuses its discretion only when it exceeds the bound of permissible choice given the facts and applicable law. *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007). Because this case comes to us on summary judgment, we review for abuse of discretion while viewing the facts and all

reasonable inferences that can be drawn from those facts in the light most favorable to Ms. Ardese. *See Eastman*, 493 F.3d at 1155-56.

A

Judicial estoppel is an equitable doctrine intended "'to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Id*. at 1156 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). We have held that three factors typically inform the decision whether to apply the doctrine in a particular case:

> First, a party's subsequent position must be clearly inconsistent with its former position. Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.

*Id*. (citations, emphasis, and quotations omitted). In *Eastman* itself, we found these conditions were met because the plaintiff had failed to disclose a pending lawsuit as a potential asset of the estate in his bankruptcy filings, received a discharge of his debts in bankruptcy, and then sought to prosecute his undisclosed damages suit. *See id.* at 1156-60.

There is little obvious daylight between *Eastman* and Ms. Ardese's case. First, Ms. Ardese's position in the bankruptcy court – representing that she did

not have any administrative proceedings, lawsuits, or other claims for damages against DCT – is clearly inconsistent with her position in the district court as she pursued her pre-existing claims against DCT.  Second, because the bankruptcy court proceeded as if no legal claims existed and granted a discharge of Ms. Ardese's debts on that basis, "[t]he obvious perception" is that the bankruptcy court was misled.  *Id.* at 1159 (quotation omitted).  Finally, to permit her to proceed now on her undisclosed claims against DCT would grant Ms. Ardese the "ultimate benefit," inconsistent with her discharge in bankruptcy, of gaining financially from an asset undisclosed to her creditors.  *Id.* at 1159-60.  In this respect, Ms. Ardese's case appears "indistinguishable from the overwhelming majority of cases where debtors, who have failed to disclose legal claims to the bankruptcy court without credible evidence of why they did so, have been judicially estopped from pursuing such claims subsequent to discharge."  *Id.* at 1159.

B

1.  Despite the apparent congruity between *Eastman* and her own case, Ms. Ardese argues that she should be excused for failing to disclose her potential claims against DCT because she is unskilled in the law.  As it happens, however, Ms. Ardese was aided by counsel in her bankruptcy proceedings and we rejected very much this same line of argument in *Eastman*.  There, the plaintiff stressed that he was "unsophisticated" and "unschooled" in bankruptcy matters.  *Id.*  We

responded by recognizing that "[a] large portion of debtors who file for chapter 7 bankruptcy are [equally] 'unsophisticated' and 'unschooled,' . . . yet have little difficulty fully disclosing their financial condition to the bankruptcy court." *Id.* We then categorically held that the argument that a debtor "simply did not know better and [her bankruptcy attorney] attorney 'blew it' is insufficient to withstand application of the doctrine." *Id.* Bound by *Eastman*, we are not free to reach a different result here.

2. Ms. Ardese stresses that she eventually reopened her bankruptcy case to disclose her lawsuit to the bankruptcy court, if admittedly only in response to DCT's motion for summary judgment. *Eastman* indicates, however, that this will not suffice to preclude application of judicial estoppel:

> Allowing [a debtor/plaintiff] to 'back up' and benefit from the reopening of his [or her] bankruptcy only after his [or her] omission had been exposed would suggest that a debtor should consider disclosing potential assets only if he [or she] is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets.

*Id*. at 1160 (quotation and brackets omitted). Simply put, the initial favorable Chapter 7 discharge Ms. Ardese received was "sufficient to establish a basis for judicial estoppel, even if the discharge [was] later vacated." *Id.* (quotation omitted).

3. Ms. Ardese contends that she could not have disclosed her claims against DCT because she did not know of them at the time she filed for

-8-

bankruptcy. We agree with the district court, however, that, based on the undisputed facts, no reasonable jury could accept this assertion. Before her October 11, 2005, bankruptcy petition, Ms. Ardese filed a Union grievance on March 13, 2005, expressly requesting reinstatement and lost wages and benefits. Aplee. Supp. App., Vol. II at 477. In the General Intake Questionnaire she submitted to the EEOC on April 12, 2005, Ms. Ardese was asked what her expectations were from filing the charge, and she expressly stated that she sought "Back Pay" and "Compensatory damages." *Id*. at 427. Each time the EEOC dismissed one of Ms. Ardese's charges, it sent her a document titled "Dismissal and Notice of Rights"; the notices and the accompanying cover letters informed Ms. Ardese of her right to sue and the time limit for filing such a lawsuit. Plainly, Ms. Ardese knew before she filed for bankruptcy that she had a claim against DCT.

Her knowledge was further confirmed during the course of the bankruptcy proceedings themselves, a time during which she bore a continuing duty to disclose claims known to her. For example, on December 14, 2005, she wrote the EEOC expressly seeking a "notice of right to sue." Aplt. App. at 221. When she received the notice – three days after she filed for bankruptcy – she saw that it only reflected her ADA claim, and she called the EEOC asking for an amendment of the notice to include her other claims. In another note dated December 18, 2005, Ms. Ardese similarly wrote, "I'm pleading to let me have my day in court

with these people (co. and others involved[)]." *Id.* at 228. On these facts, a reasonable jury considering the above evidence could not find that Ms. Ardese was unaware that she had a claim against DCT prior to the termination of her bankruptcy case.[1]

4. Finally, Ms. Ardese argues that the district court's ruling in *Archuleta v. Wagner*, No. 06-CV-02061-LTB, 2007 WL 3119615 (D. Colo. Oct. 22, 2007), indicates that the district court in this case abused its discretion in applying judicial estoppel. In *Archuleta*, two months after the debtor filed for bankruptcy she was arrested pursuant to a domestic violence charge. The arrest was later determined to have been improper and the debtor filed a 42 U.S.C. § 1983 action. She initially failed to update her bankruptcy filings to show her new claim, but eventually updated her Chapter 13 plan to reflect the lawsuit after the omission was brought to her attention by the defendants in the federal action.

Obviously we are not bound by the district court's decision in *Archuleta*, and we express no opinion on its correctness. Further, the fact that another judge in another case might have made a different decision about applying an equitable doctrine does not suggest that the district court in this case abused its discretion. Nevertheless, we see at least a couple material distinctions between *Archuleta*, on the one hand, and this case and *Eastman*, on the other. In the first place, the

---

[1] Speaking of her *mens rea*, it is also of some significant interest, if not necessary to our analysis, that Ms. Ardese filed her claims against DCT the very same day she received her bankruptcy discharge.

-10-

bankruptcy proceedings in *Archuleta* were still in progress when the debtor corrected her omission. The debtor therefore had not obtained the advantage of having her debts discharged at the time she corrected her error, unlike Ms. Ardese. In fact, the district court in *Archuleta* specifically noted that "[c]ourts will generally not allow a plaintiff to" avoid judicial estoppel by "retroactively reopen[ing] a closed bankruptcy case to allow disclosure of a pending civil claim." *Id.* at *4.

Additionally, unlike the omission in this case, the omission in *Archuleta* was not corrected only in response to prodding from an opposing party in the form of a motion for summary judgment. Voluntary amendment presents quite a different equitable scenario than that presented here, where Ms. Ardese was "forced to [amend her bankruptcy petition] by the actions of her civil opponent." *Id.* at *5. The district court in *Archuleta* expressly acknowledged that "courts will generally not allow a plaintiff to" avoid judicial estoppel by "amend[ing] her bankruptcy filings in response to a motion for summary judgment – based on judicial estoppel – in an ongoing civil case." *Id.* at *4. For at least these reasons,

we consider *Eastman*, rather than *Archuleta*, a more appropriate analogy in this case.

* * *

The judgment of the district court is affirmed.

Entered for the Court


Neil M. Gorsuch
Circuit Judge