**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KATHLEEN M. AH QUIN, *Plaintiff-Appellant*, | No. 10-16000 |
| v. | D.C. No. 1:08-cv-00507-BMK |
| COUNTY OF KAUAI DEPARTMENT OF TRANSPORTATION, *Defendant-Appellee*. | OPINION |

Appeal from the United States District Court
for the District of Hawaii
Barry M. Kurren, Magistrate Judge, Presiding

Argued and Submitted
February 12, 2013—Honolulu, Hawaii

Filed July 24, 2013

Before: Susan P. Graber, Jay S. Bybee, and
Morgan Christen, Circuit Judges.

Opinion by Judge Graber;
Dissent by Judge Bybee

**SUMMARY**[*]

**Bankruptcy / Judicial Estoppel**

The panel vacated the district court's summary judgment holding that judicial estoppel prohibited the plaintiff from proceeding with her employment discrimination action, which she had failed to list in her bankruptcy schedules.

Disagreeing with the test articulated by other circuits, the panel held that the district court applied the wrong legal standard in determining whether the plaintiff's bankruptcy omission was "mistaken" or "inadvertent." The panel concluded that when a plaintiff-debtor has reopened the bankruptcy proceedings and has corrected the initial filing error, narrow interpretations of "mistake" and inadvertence" do not apply. The panel stated that in these circumstances, rather than the application of a presumption of deceit, judicial estoppel requires an inquiry into whether the plaintiff's bankruptcy filing was, in fact, inadvertent or mistaken, as those terms are commonly understood. The panel remanded the case for application of the correct legal standard.

Dissenting, Judge Bybee wrote that the majority's holding was at odds with the law of other circuits and also with this court's case law, which holds that the relevant inquiry when considering inadvertence or mistake is limited to (1) the plaintiff's knowledge of the pending claim and (2) the universal motive to conceal a potential asset. Judge Bybee wrote that in addition, even applying a broader understanding

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

of inadvertence or mistake, the evidence could not support a finding that the plaintiff's subjective intent was innocent.

## COUNSEL

William H. Burgess (argued) and Dominic E. Draye, Kirkland & Ellis LLP, Washington, D.C., for Plaintiff-Appellant.

Barbara A. Petrus (argued), Shannon H. Sagum, and Jordan M. Odo, Goodsill Anderson Quinn & Stifel LLP, Honolulu, Hawaii, for Defendant-Appellee.

## OPINION

GRABER, Circuit Judge:

Plaintiff Kathleen M. Ah Quin contends that her employer, Defendant County of Kauai Department of Transportation, discriminated against her because she is a woman. While pursuing this action, however, Plaintiff filed for Chapter 7 bankruptcy protection and initially failed to list this action in her bankruptcy schedules. The district court held that judicial estoppel prohibits her from proceeding and, therefore, granted summary judgment to Defendant. We hold that the district court applied the wrong legal standard in determining whether Plaintiff's bankruptcy omission was "mistaken" or "inadvertent." Accordingly, we vacate the judgment and remand for further proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiff initiated this employment-discrimination action on November 10, 2008. She alleges that, because of her gender, Defendant reduced her work hours and denied her full-time status, in violation of various discrimination statutes and under the common law. On December 18, 2009, the district court denied Defendant's motion for summary judgment on the merits. The court scheduled the case for a jury trial in April 2010.

Meanwhile, Plaintiff had obtained bankruptcy protection. Represented by a different lawyer than her lawyer in this case, Plaintiff filed for Chapter 7 bankruptcy on April 4, 2009. A debtor must list all pending lawsuits in the bankruptcy schedules, but Plaintiff checked the box "None" next to this line item: "List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." (Emphasis omitted.) At a bankruptcy hearing, Plaintiff testified that she had listed all of her assets and that the answers in her petition and schedules are "true and correct." She did not mention this pending action. During a colloquy concerning her husband's losing his job, Plaintiff responded to a question about whether she had a claim by saying: "No. No."[1] On September 1, 2009, the bankruptcy court issued an order of discharge and closed the case.

---

[1] The parties dispute the significance of that colloquy. In our view, the most plausible reading is that Plaintiff was referring to a claim *for her husband's loss of work*, not to a claim in general. But we do not resolve that factual dispute.

At some point, Plaintiff's lawyer in *this* case became aware of the potential effect of Plaintiff's bankruptcy proceeding. At a settlement conference on December 21, 2009, Plaintiff's lawyer informed Defendant of Plaintiff's bankruptcy filing.

On December 29, 2009, Defendant wrote a letter to the district court setting forth the position that it could move to dismiss the action under the doctrine of judicial estoppel. The next day, the district court vacated all dates and deadlines, and it scheduled a status conference for January 14, 2010.

On January 13, 2010, Plaintiff moved to reopen her bankruptcy case and to set aside the discharge. The motion, accompanied by declarations from her bankruptcy lawyer's staff and from Plaintiff, explained that Plaintiff had never disclosed the pending lawsuit to her bankruptcy lawyer or his staff and that Plaintiff's failure to list the lawsuit as an asset stemmed from Plaintiff's misunderstanding of what she was required to do. The bankruptcy court reopened the case the same day. Plaintiff amended her bankruptcy schedules to list this pending claim as an asset.

On February 10, 2010, Defendant filed a motion for summary judgment in the discrimination action, on the ground that judicial estoppel prohibits Plaintiff from proceeding. The district court agreed and granted summary judgment in an order dated April 1, 2010. Plaintiff timely appeals.

On June 20, 2010, the bankruptcy trustee filed a report that abandoned the trustee's interest in the pending discrimination action. Plaintiff's unsecured creditors did not

object to that action by the trustee.  On July 21, 2010, the bankruptcy court closed the reopened case.

## STANDARDS OF REVIEW

We review de novo a grant of summary judgment. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).  We review "the district court's application of the doctrine of judicial estoppel to the facts of [a] case for an abuse of discretion."  *Id.*  "The district court . . . necessarily abuses its discretion when it bases its decision on an erroneous legal standard . . . ."  *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks omitted).

## DISCUSSION

"[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion."  *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation marks omitted).  "[I]ts purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *Id.* at 749–50 (citation and internal quotation marks omitted).

Although judicial estoppel is "probably not reducible to any general formulation of principle, . . . several factors typically inform the decision whether to apply the doctrine in a particular case."  *Id.* at 750 (citations and internal quotation marks omitted).  "First, a party's later position must be 'clearly inconsistent' with its earlier position."  *Id.*  "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later

proceeding would create the perception that either the first or the second court was misled." *Id.* (internal quotation marks omitted). "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751. "In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *Id.*

In the bankruptcy context, the federal courts have developed a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action. *See, e.g.*, *Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993) ("Conceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate, even passively."); *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992) (holding that "[f]ailure to give the required notice [to the bankruptcy court] estops [the plaintiff-debtor] and justifies the grant of summary judgment to the defendants"). The reason is that the plaintiff-debtor represented in the bankruptcy case that no claim existed, so he or she is estopped from representing in the lawsuit that a claim *does* exist. That basic rule comports fully with the Supreme Court's decision in *New Hampshire*: (1) the positions are clearly inconsistent ("a claim does not exist" vs. "a claim does exist"); (2) the plaintiff-debtor succeeded in getting the first court (the bankruptcy court) to accept the first position; and (3) the plaintiff-debtor obtained an unfair advantage (discharge or plan confirmation without allowing

the creditors to learn of the pending lawsuit). The general rule also comports fully with the policy reasons underlying the doctrine of judicial estoppel: to prevent litigants from playing "fast and loose" with the courts and to protect the integrity of the judicial system. *New Hampshire*, 532 U.S. at 749–50.

Of particular relevance here, though, the Supreme Court held in *New Hampshire*, that "it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." 532 U.S. at 753 (internal quotation marks omitted). We have not addressed the effect of an inadvertent or mistaken omission from a bankruptcy filing, but several of our sister circuits have. *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1157 (10th Cir. 2007); *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286–87 (11th Cir. 2002); *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002); *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 206 (5th Cir. 1999). Those courts generally have interpreted this factor narrowly. The courts have asked not whether the debtor's omission of the pending claim from the bankruptcy schedules was inadvertent or mistaken; instead, they have asked only whether the debtor knew about the claim when he or she filed the bankruptcy schedules and whether the debtor had a motive to conceal the claim. *See, e.g.*, *Eastman*, 493 F.3d at 1157 ("Where a debtor has both knowledge of the claims and a motive to conceal them, courts routinely, albeit at times *sub silentio*, infer deliberate manipulation."). This interpretation of "inadvertence" is narrow in part because the motive to conceal claims from the bankruptcy court is, as several courts have explained, nearly always present. *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 601 (5th Cir. 2005); *Coastal Plains*, 179 F.3d at 212–13.

Here, the district court applied that narrow interpretation. Defendant argued repeatedly to the district court that, to overcome Plaintiff's inadvertence argument, all it had to show was that Plaintiff (1) knew of her claim and (2) had a motive to conceal the claim from the bankruptcy court. Defendant argued that the doctrine of judicial estoppel "should be and must be applied" to Plaintiff's circumstances. The district court appeared to adopt Defendant's argument. It reasoned: "I think the Court is *bound* to apply that law to the circumstances we have here and accordingly, summary judgment will be entered in favor of the defense."[2] (Emphasis added.) The district court's belief that it was *bound* to preclude Plaintiff from bringing her discrimination claim is mistaken and fundamentally at odds with equitable principles. Judicial estoppel is a discretionary doctrine, applied on a case-by-case basis. *See New Hampshire*, 532 U.S. at 751 (refusing to "establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel"). A court is not "bound" to apply judicial estoppel, particularly when "a party's prior position was based on inadvertence or mistake."[3]  *Id.* at 753 (internal quotation marks omitted).

---

[2] Whether the district court thought that it was "bound" by *Hamilton* or by out-of-circuit case law, it was mistaken. In *Hamilton*, we were not presented with an opportunity to address inadvertence or mistake. *See infra* note 6.

[3] Consider, for example, a litigant who is not represented by counsel or who speaks English as a second language and fails to include a claim on her bankruptcy schedule because she does not understand that she was required to do so. The narrow rule applied by the district court would punish the litigant for making an honest mistake and would leave no room for equitable considerations.

The court held that Plaintiff's bankruptcy filing was not "inadvertent" because, as Plaintiff concedes, she knew about the existence of this action when she filed for bankruptcy and because, as is true in practically all bankruptcy cases, Plaintiff had a motive to conceal the claim: keeping any potential proceeds from creditors.

The parties dispute whether the district court applied the correct legal standard when it found that Plaintiff's omission was not a result of inadvertence or mistake. *See, e.g.*, *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 992 (9th Cir. 2012) (holding that, when reviewing applications of judicial estoppel, we first must determine "whether the trial court identified the correct legal rule"). The starting point for our analysis is that our cases have not addressed the effect of an inadvertent or mistaken omission from a bankruptcy filing.[4] Many of the dissent's arguments hinge on its repeated assertions that our previous cases have already answered this question, dissent at 25–27, 30–39, despite the fact that not one of our previous cases has even considered it. We are unwilling to glean the legal standard for what constitutes "inadvertence or mistake" in a bankruptcy filing from cases that plainly did not concern that factor. As explained below, we agree with Plaintiff that the district court erred in applying the narrow interpretation of "inadvertence" because, in the circumstances, that interpretation is too stringent.

---

[4] The district court turned to Tenth Circuit authority to interpret the meaning of "inadvertence or mistake." The district court thus seems to have recognized that our circuit had not defined these terms in the present context.

A key factor is that Plaintiff reopened her bankruptcy proceedings and filed amended bankruptcy schedules that properly listed this claim as an asset. When a plaintiff-debtor has *not* reopened bankruptcy proceedings, a narrow exception for good faith is consistent with *New Hampshire* and with the policies animating the doctrine of judicial estoppel. The three primary *New Hampshire* factors are still met (inconsistency, bankruptcy court accepted the contrary position, to the debtor's unfair advantage). And, as courts repeatedly stress, the importance of full disclosure in bankruptcy proceedings "cannot be overemphasized." *Coastal Plains*, 179 F.3d at 208; *see also, e.g.*, *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) ("[T]he importance of full and honest disclosure cannot be overstated."); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (holding that "we cannot overemphasize the debtor's obligation" to provide full disclosure). In sum, given the strong need for full disclosure in bankruptcy proceedings and the fact that the plaintiff-debtor received an unfair advantage in the bankruptcy court, it makes sense to apply a presumption of deliberate manipulation. *See Eastman*, 493 F.3d at 1159 ("That he well knew of his pending lawsuit and simply did not disclose it to the bankruptcy court is the only reasonable inference to be drawn from the evidence."). But where, as here, the plaintiff-debtor reopens bankruptcy proceedings, corrects her initial error, and allows the bankruptcy court to re-process the bankruptcy with the full and correct information, a *presumption* of deceit no longer comports with *New Hampshire*.

Along with most of our sister circuits, we have held that—at least where the plaintiff-debtor does not claim inadvertence or mistake—the reopening of a bankruptcy case

is generally irrelevant to the analysis of judicial estoppel. *Eastman*, 493 F.3d at 1160; *Barger v. City of Cartersville*, 348 F.3d 1289, 1297 (11th Cir. 2003); *Burnes*, 291 F.3d at 1288; *Hamilton*, 270 F.3d at 784;[5] *Oneida*, 848 F.2d at 418. That is, even if a plaintiff-debtor corrects the initial mistake and no longer receives a benefit in bankruptcy court, judicial estoppel still applies—wiping out a potentially meritorious action against an unrelated third party. Courts have provided three primary justifications for the rule.

First, as noted above, *supra* p. 11, full disclosure in bankruptcy is essential to the functioning of the bankruptcy system, a fact that "cannot be overemphasized." *Coastal*

---

[5] In *Hamilton*, it was palpable from the record that the plaintiff-debtor's bankruptcy omission was intentional in every sense of the term. *See* 270 F.3d at 781. Hamilton sought recovery from an insurance company for water damage and loss of allegedly stolen property following a partial flood of his house. *Id.* at 780. The insurance company, "apparently suspicious" of Hamilton's insurance claim, initiated an investigation into its validity. *Id.* Hamilton enlisted lawyers to pressure the insurance company to pay Hamilton quickly, claiming that the insurer was acting in bad faith and threatening litigation. *Id.* at 781. Meanwhile, Hamilton filed for bankruptcy. The insurer's investigation revealed that Hamilton was "probably responsible" for the damage and theft and that he had violated the insurance policy's concealment-of-fraud provision. Less than two weeks after the denial, Hamilton filed his bankruptcy schedules, listing a residential vandalism loss but not his bad faith claim against the insurer. The bankruptcy trustee requested information from Hamilton regarding insurance recovery, but Hamilton replied with a non-responsive letter. The trustee successfully moved to reopen the bankruptcy case on the grounds of "bad faith, lack of truthfulness under oath, and failure to cooperate." *Id.* Hamilton then filed a suit against his insurer, which was dismissed based on judicial estoppel; we affirmed. Critically, Hamilton *did not* argue that his failure to disclose was based on inadvertence or mistake, and our opinion in *Hamilton* did not mention, define, or consider the relevance of inadvertence or mistake.

*Plains*, 179 F.3d at 208.  Second, the initial disclosures failed to tell the creditors about the lawsuit.  *See, e.g.*, *Hamilton*, 270 F.3d at 784 (holding that an initial "discharge of debt by a bankruptcy court, under these circumstances, is sufficient acceptance to provide a basis for judicial estoppel, even if the discharge is later vacated"); *Oneida*, 848 F.2d at 418 ("[The original bankruptcy plan] was informationally deficient, and not cured by the later modification.  The original plan failed to alert the creditors to the possible financial benefits enuring to them upon the successful prosecution of the claim." (footnote omitted)).  Finally, and perhaps most importantly, courts have held that application of judicial estoppel is necessary in order to incentivize future debtors (and their lawyers) to provide full disclosure.  In an oft-quoted passage, one court wrote:

> The success of our bankruptcy laws requires a debtor's full and honest disclosure. Allowing [the debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets.

*Burnes*, 291 F.3d at 1288.

   As the Seventh Circuit has recognized in unanimous opinions, *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410 (7th Cir. 2006), and *Cannon-Stokes v. Potter*, 453 F.3d 446 (7th Cir.

2006), and as Judge Stapleton recognized in dissent in *Oneida*, those justifications do not withstand scrutiny. First, and perhaps most importantly, once a plaintiff-debtor has amended his or her bankruptcy schedules and the bankruptcy court has processed or re-processed the bankruptcy with full information, two of the three primary *New Hampshire* factors are no longer met. Although the plaintiff-debtor initially took inconsistent positions, the bankruptcy court ultimately *did not accept* the initial position. The Supreme Court put it well: "Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations and thus poses little threat to judicial integrity." *New Hampshire*, 532 U.S. at 750–51 (citation and internal quotation marks omitted).

Moreover, the plaintiff-debtor *did not obtain an unfair advantage.*[6]    Indeed, the plaintiff-debtor obtained no advantage at all, because he or she did not obtain any benefit whatsoever in the bankruptcy proceedings. *See Dunmore v.*

---

[6] Labeling them "recycled arguments," the dissent asserts that these positions are "plainly foreclosed by *Hamilton*." Dissent at 36. We disagree. In determining whether to apply judicial estoppel, the district court must consider all factors—including inadvertence or mistake. Nothing in *Hamilton* forecloses the possibility that a court could conclude that, whereas an intentional omission (as in *Hamilton*) would result in an *unfair* advantage, an inadvertent or mistaken omission might *not* be unfair. Similarly, nothing in *Hamilton* forecloses the possibility that a court could reach a different conclusion about the effect of the bankruptcy court's *initial* acceptance of the plaintiff-debtor's position. Indeed, we held in *Hamilton* that the initial "discharge of debt by a bankruptcy court, *under these circumstances*, is sufficient acceptance to provide a basis for judicial estoppel." 270 F.3d at 784 (emphasis added). If the circumstances are materially different (*i.e.*, where the plaintiff-debtor's omission was inadvertent or mistaken, instead of intentional), *Hamilton* does not foreclose a different result.

*United States*, 358 F.3d 1107, 1113 n.3 (9th Cir. 2004) (holding that the district court's allowing the plaintiff-debtor to reopen his bankruptcy case, thereby preventing the plaintiff-debtor "from having his cake and eating it too," "was a permissible alternative to judicial estoppel that prevented [him] from deriving an unfair advantage if not estopped"). Cases such as *Oneida*, 848 F.2d at 418, which justify the application of judicial estoppel because *the creditors* were not told initially of the pending action are wrong for two reasons: The creditors *are told* eventually, and the doctrine of judicial estoppel is concerned with the integrity of the *courts*, not the effect on parties.  *See, e.g.*, *Ryan*, 81 F.3d at 360 ("Judicial estoppel is intended to protect the courts rather than the litigants." (internal quotation marks omitted)).

Next, there is some intuitive appeal to the deterrence justification—punishing wrongdoers will incentivize future debtors to list their assets exhaustively.  But that justification is a very awkward fit for the doctrine of judicial estoppel. Judicial estoppel typically operates to protect the integrity of the judicial system with respect to the particular litigant in front of the court.  In the context of judicial estoppel, it is odd to punish a present litigant merely in order to discourage inconsistent positions by future litigants.  Moreover, the courts that have mentioned this justification phrase it in terms not of protecting the courts but of promoting the efficient operation of the bankruptcy system.  That aim—protecting the bankruptcy system—differs from the goal of judicial estoppel—protecting the integrity of the courts.  To the extent that the bankruptcy system lacks adequate protections, that is a shortcoming not of the court system, but of the bankruptcy laws.

In any event, the bankruptcy system already provides plenty of protections. The bankruptcy court or trustee may reopen a case if it uncovers deception, as occurred in *Hamilton*, 270 F.3d at 781. (Here, Plaintiff voluntarily initiated the reopening.) A case may be reopened even if it has long been closed. 11 U.S.C. § 350(b); Fed. R. Bankr. P. 5010. A bankruptcy court or trustee can impose sanctions, including denial of a discharge. Fed. R. Bankr. P. 9011. And, of course, a case may be referred to the United States Attorney's office for criminal prosecution. *See* 18 U.S.C. § 152 (criminalizing the concealment of assets, false oaths, and claims). "The availability of such a course of action would in most cases adequately deter nondisclosure." *Oneida*, 848 F.2d at 423 (Stapleton, J., dissenting).

Finally, the application of judicial estoppel in these circumstances operates to the detriment primarily of innocent creditors and to the benefit of only an alleged bad actor. When a plaintiff-debtor amends his or her bankruptcy schedules to include the previously omitted lawsuit, the creditors may now stake a claim in that lawsuit. By not permitting the civil action to go forward, the *creditors lose out* on a potential recovery. *See Cannon-Stokes*, 453 F.3d at 448 ("Judicial estoppel is an equitable doctrine, and it is not equitable to employ it to injure creditors who are themselves victims of the debtor's deceit."); *Oneida*, 848 F.2d at 422 (Stapleton, J., dissenting) ("The [Bankruptcy] Code's disclosure requirements are intended to protect those creditors whom a debtor's failure to disclose hidden assets would prejudice. *A fortiori*, a court's response to nondisclosure should do likewise.").

Perversely, the only "winner" in this scenario is the alleged bad actor in the estopped lawsuit. *See Oneida*,

848 F.2d at 422–23 (Stapleton, J., dissenting) ("The only real winner in the case as decided is the [defendant], whom the court has relieved of the responsibility of justifying its allegedly improper behavior."). If Defendant here did, in fact, discriminate against Plaintiff,[7] it will not have to pay the consequences of its actions, for the entirely unrelated reason that Plaintiff happened to file for bankruptcy and, possibly due to inadvertence, happened to omit the claim from her initial schedules. Further, because the application of judicial estoppel does not look to the nature of the underlying claim, the alleged bad actor could be someone who clearly does not warrant a windfall (e.g., someone who physically assaulted the plaintiff and badly injured him or her). It seems hard to justify a policy that takes money from innocent third-party creditors and gives it, for example, to a violent criminal. *See Oneida*, 848 F.2d at 420 (Stapleton, J., dissenting) ("[The debtor's] unsecured creditors . . . should not be required to contribute towards a windfall for an alleged wrongdoer.").

Writing for a unanimous panel of the Seventh Circuit, Judge Easterbrook summarized:

> Judges understandably favor rules that encourage full disclosure in bankruptcy. Yet pursuing that end by applying judicial estoppel to debtors' self-contradiction would have adverse effects on third parties: the creditors. [The debtor's] nondisclosure in bankruptcy harmed his creditors by hiding assets from them. Using this same nondisclosure to wipe out his [statutory] claim would complete the job by denying creditors

---

[7] We express no view on the merits of Plaintiffs' claims.

even the right to seek some share of the recovery. Yet the creditors have not contradicted themselves in court. They were not aware of what [the debtor] has been doing behind their backs. Creditors gypped by [the debtor's] maneuver are hurt a second time by the district judge's decision. Judicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application. Instead of vaporizing assets that could be used for the creditors' benefit, district judges should discourage bankruptcy fraud by revoking the debtors' discharges and referring them to the United States Attorney for potential criminal prosecution.

*Biesek*, 440 F.3d at 413.

The analysis by the Seventh Circuit and Judge Stapleton supports our conclusion that, when the plaintiff-debtor has reopened the bankruptcy proceedings and has corrected the initial filing error, the narrow interpretations of "mistake" and "inadvertence" do not apply. If Plaintiff's bankruptcy omission was mistaken, the application of judicial estoppel in this case would do nothing to protect the integrity of the courts, would enure to the benefit only of an alleged bad actor, and would eliminate any prospect that Plaintiff's unsecured creditors might have of recovering.[8]

---

[8] Here, the bankruptcy trustee decided not to pursue the claim and abandoned it, so the right to bring this action reverted to Plaintiff. Plaintiff's unsecured creditors did not object to that action by the trustee. Although the creditors may not receive any benefit from this action, that

In these circumstances, rather than applying a *presumption* of deceit, judicial estoppel requires an inquiry into whether the plaintiff's bankruptcy filing was, in fact, inadvertent or mistaken, as those terms are commonly understood. Courts must determine whether the omission occurred by accident or was made without intent to conceal. The relevant inquiry is not limited to the plaintiff's knowledge of the pending claim and the universal motive to conceal a potential asset—though those are certainly factors. The relevant inquiry is, more broadly, the plaintiff's subjective intent when filling out and signing the bankruptcy schedules.

We recognize that, by adopting the ordinary understanding of "mistake" and "inadvertence" in this context, we differ from the test articulated by most of our sister circuits—whether the plaintiff knew of the claims and had a motive to conceal them. Our review of our sister circuits' case law, however, suggests that their application of the rule has not been as rigid as one would expect. We read many of those cases as implicitly recognizing the harsh results to which the narrow interpretation leads and avoiding that harsh result.

In *Browning*, 283 F.3d at 776, for instance, the Chapter 11 bankruptcy plan, ultimately confirmed by the bankruptcy court, conferred all benefits from the lawsuit to the creditors

---

was the choice of the creditors and the trustee. The important point is that the trustee and the creditors had a *full opportunity* to pursue this avenue. Moreover, we are not aware of anything that would prevent Plaintiff or her creditors from moving to reopen the bankruptcy proceedings to allow the creditors to benefit. *Cf. Hay*, 978 F.2d at 557 ("We make no ruling on the rights of the creditors themselves to move to reopen the bankruptcy proceedings.").

only. The Sixth Circuit held that, because all benefits would go to the creditors, the plaintiff-debtor had lacked a motive to conceal the lawsuit. *Id.* But one would expect the inquiry into motive to be focused on *the time of omission*, not viewed from the perspective of the *conclusion of the bankruptcy proceedings*. The plaintiff-debtor almost certainly had a motive to conceal; it just turned out that the bankruptcy court's ultimate resolution of the case did not benefit the plaintiff-debtor. *See also Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004) (holding that judicial estoppel did not apply because the debtor attempted to disclose the claims to the bankruptcy court); *Barger*, 348 F.3d at 1298 (Barkett, J., dissenting) (stating that judicial estoppel is not warranted because the debtor disclosed the claims to the bankruptcy court, albeit imperfectly); *Ryan*, 81 F.3d at 363–64 (concluding that the debtor did not act in bad faith for several reasons, including that the confirmed bankruptcy plan conferred 91% of the benefit to the creditors); *cf. Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1049 (8th Cir. 2006) (holding that judicial estoppel did not apply because the bankruptcy court dismissed the case on the trustee's motion and therefore never discharged the debt).

The court in *Ryan*, 81 F.3d at 364, explained:

> [P]olicy considerations militate against adopting a rule that the requisite intent for judicial estoppel can be inferred from the mere fact of nondisclosure in a bankruptcy proceeding. Such a rule would unduly expand the reach of judicial estoppel in post-bankruptcy proceedings and would inevitably result in the preclusion of viable claims on the basis of inadvertent or

good-faith inconsistencies. While we by no means denigrate the importance of full disclosure or condone nondisclosure in bankruptcy proceedings, we are unwilling to treat careless or inadvertent nondisclosures as equivalent to deliberate manipulation when administering the "strong medicine" of judicial estoppel.

We agree. But, rather than adopting a narrow interpretation of "mistake" and "inadvertence" and applying it broadly, we believe that an ordinary interpretation of those terms in these circumstances is more consistent with the Supreme Court's decision in *New Hampshire*, better reflects the equitable considerations underlying the doctrine, and will be less confusing for courts to apply.

Turning to the evidence here, we find factual support for a conclusion either of mistake and inadvertence, or of deceit. On the one hand, Plaintiff filed an affidavit in which she swore that, when she reviewed the bankruptcy schedules, she did not think that she had to disclose her pending lawsuit because the bankruptcy schedules were "vague." Also, in her bankruptcy schedules, she listed her lawyer as a creditor for $5,000; she claims that, if she "was truly seeking to hide [the] lawsuit from the bankruptcy court," she would not have listed that lawyer. (Indeed, it was that listing that ultimately caused the reopening of the bankruptcy case and Defendant's raising of judicial estoppel.) Contrary to Defendant's repeated assertion that Plaintiff was "caught," it was Plaintiff's counsel who first raised the bankruptcy to Defendant's attention at a settlement conference. On the other hand, Plaintiff's testimony at the bankruptcy hearing suggests that she should have been aware that a pending claim is relevant. Similarly,

the timing of the reopening of the bankruptcy case seems inculpatory:  She did not move to reopen the bankruptcy case until after Defendant here raised the issue of judicial estoppel.  But viewing the evidence in the light most favorable to Plaintiff, and thus crediting her affidavit, *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987), her bankruptcy filing was inadvertent.

The dissent takes issue with our analysis of the record.  The dissent argues that, after the colloquy with the bankruptcy court concerning her *husband's* possible legal claims, Plaintiff *must* have known that she was required to disclose *her own* claim.  Dissent at 42–43.  Using that premise, the dissent concludes that Plaintiff's affidavit is a sham.  *Id.* at 45–46.

We firmly disagree.  Because this case reaches us after the entry of summary judgment for Defendant, we are required to interpret the facts in the light most favorable to Plaintiff.  *T.W. Elec.*, 809 F.2d at 630–31.  The dissent has done an excellent job of marshaling the evidence that suggests that Plaintiff was lying, including the colloquy with the bankruptcy court.  But, in order to hold that Plaintiff's affidavit—which concerns the quintessentially personal fact of state of mind—is a sham, the content of the affidavit must be "'blatantly contradicted by the record.'"  Dissent at 45 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  A full transcript of the colloquy, quoted by the dissent at 40–42, is nothing if not confusing.  We agree that one *could* interpret the colloquy as having put Plaintiff "on notice that a lawsuit was relevant," *id.* at 42, but the colloquy is far from the smoking gun that the dissent portrays it to be.  We easily

conclude that the muddled colloquy is insufficient to hold, at this procedural stage, that Plaintiff's affidavit is a sham.**[9]**

On remand, after such further factual development as may be appropriate, the district court might find that Plaintiff's affidavit is not trustworthy and that Plaintiff's omission was not mistaken or inadvertent. Alternatively, the court might find that Plaintiff's omission was mistaken or inadvertent. We cannot make that determination on this record. Because the district court applied the wrong legal standard, we vacate

---

**[9]** Here are Plaintiff's statements during the colloquy: "'My husband lost his job due to workplace violence'"; "'Due to workplace violence. It wasn't his fault. We're fighting it—or trying to.'"; "'What?'"; "'We haven't gone—'"; "'—and done anything legally yet.'"; "'It's on my husband.'"; "'Yea, but—'"; "'No. No.'"; "'No, yeah.'" *See* dissent at 40–42 (quoting colloquy). Nothing in those statements suggests that Plaintiff necessarily gained knowledge about her legal requirements.

The dissent emphasizes many statements during the colloquy, but only two concern legal requirements. Neither of those statements put Plaintiff clearly on notice. First, the court said, "So you need to list that claim in the schedules[.]" The phrase "that claim" refers, of course, to her husband's claim. Moreover, the immediately following lines of the transcript show Plaintiff's attorney interrupting and Plaintiff asking, simply, "What?" The court never repeated its statement. In other words, the dissent argues that we must infer blatant knowledge from a statement that the court made about a *different* claim that Plaintiff *apparently did not even hear or understand*.

Second, the court's final statement was: "So you don't need to list the exclusions." Again, "that exclusion" refers to her husband's claim. Moreover, the statement tells Plaintiff that she did *not* need to list the claim. We decline to infer blatant knowledge of the *opposite* conclusion about a claim *never discussed by the bankruptcy court*. The dissent offers no additional explanation as to why the colloquy is so overwhelmingly persuasive that no reasonable lay person could have failed to grasp the legal requirement to list the unmentioned claim.

the district court's grant of summary judgment and remand for application of the correct legal standard. *Farris*, 677 F.3d at 864.

**VACATED and REMANDED.** Costs on appeal awarded to Plaintiff-Appellant.

---

BYBEE, Circuit Judge, dissenting:

Kathleen Ah Quin filed a discrimination lawsuit against the County of Kauai Department of Transportation in which she sought approximately $350,000. She later claimed that her damages were $800,000, and in response to the County's interrogatories she told the County she was entitled to $6,000,000. When Ah Quin filed for bankruptcy to get relief from less than $80,000 in debt, she told the bankruptcy court there were no "suits or administrative proceedings to which [she] is or was a party" within the year preceding commencement of her bankruptcy, even though her discrimination suit was ongoing. That statement was obviously false. Finding that "Ah Quin's failure to disclose this [discrimination] lawsuit during the bankruptcy proceedings was not based on mere inadvertence or mistake," and relying on our decision in *Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778 (9th Cir. 2001), the magistrate judge dismissed Ah Quin's discrimination claim against the County on the basis of judicial estoppel.

The magistrate judge's reliance on *Hamilton* was understandable. In *Hamilton*, we said all of the following:

- "We now hold that Hamilton is precluded from pursuing claims about which he had knowledge, but did not disclose, during his bankruptcy proceedings." *Id.* at 784.

- "Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." *Id.*

- "[W]e must invoke judicial estoppel to protect the integrity of the bankruptcy process." *Id.* at 785.

- "[D]ischarge of debt by a bankruptcy court, under these circumstances, is sufficient acceptance to provide a basis for judicial estoppel, even if the discharge is later vacated." *Id.* at 784.

In finding that the district court abused its discretion, the majority contravenes each of these clear declarations, inexplicably holding that the district court applied "the wrong legal standard," Maj. Op. at 23–24, and that the district court should have "inquir[ed] into whether the plaintiff's bankruptcy filing was, in fact, inadvertent or mistaken," Maj. Op. at 19. With all due respect, that has never been the rule with regard to false statements that conceal assets from a bankruptcy court. The majority's holding—that the relevant inquiry when considering the "inadvertence or mistake"

factor in determining whether to apply judicial estoppel in the bankruptcy context "is not limited to the plaintiff's knowledge of the pending claim and the universal motive to conceal a potential asset" but rather examines "more broadly, the plaintiff's subjective intent," Maj. Op. at 19—is not only contrary to the law of our sister circuits, as the majority admits, *see* Maj. Op. at 19,[1] but is also plainly at odds with

---

[1] *See, e.g.*, *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1157–58 (10th Cir. 2007) ("[C]ourts addressing a debtor's failure to satisfy the legal duty of full disclosure to the bankruptcy court have deemed such failure inadvertent or mistaken only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment. Where a debtor has both knowledge of the claims and a motive to conceal them, courts routinely, albeit at time *sub silentio*, infer deliberate manipulation. . . . Given th[is] overwhelming weight of authority, the district court's decision to employ judicial estoppel against [the debtor] . . . is undoubtedly sound." (internal quotation marks and citations omitted)); *Barger v. City of Cartersville*, 348 F.3d 1289, 1295 (11th Cir. 2003) ("The failure to comply with the Bankruptcy Code's disclosure duty is 'inadvertent' only when a party either lacks knowledge of the undisclosed claim or has no motive for their concealment."); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003) ("[A] rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose."); *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002) ("The Fifth Circuit . . . defined two circumstances under which a debtor's failure to disclose a cause of action in a bankruptcy proceeding might be deemed inadvertent. One is where the debtor lacks knowledge of the factual basis of the undisclosed claims, and the other is where the debtor has no motive for concealment. . . . We . . . adopt the[se requirements for inadvertence] in our analysis of the present case."); *In re Coastal Plains, Inc.*, 179 F.3d 197, 210 (5th Cir. 1999) ("[I]n considering judicial estoppel for *bankruptcy cases*, the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment."); *see also Guay v. Burack*, 677 F.3d 10, 20 & n.7 (1st Cir. 2012) ("Some circuits have held that parties who fail to identify a legal

our decision in *Hamilton* and our earlier decision in *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992) ("Failure to give the required notice [in bankruptcy] estops [the bankruptcy petitioner]."). As evidenced by the quotations from *Hamilton* provided above, the majority's holding is not saved by the fact that it is limited to cases where the debtor has moved to reopen bankruptcy proceedings to vacate the inappropriate discharge, *see* Maj. Op. at 11–19, and is made worse by the majority's disparagement of applying judicial estoppel to protect the bankruptcy system, *see* Maj. Op. at 14–15. The discord that the majority creates with *Hamilton* and *Hay* would be sufficient alone to prevent me from joining today's Opinion.

But even if I were to agree with the majority that we should adopt a broader understanding of the "inadvertence or mistake" factor in certain circumstances, the facts of this case cannot support a finding of inadvertence or mistake even under such a broader understanding. Taking the facts in the light most favorable to Ah Quin, the evidence cannot support a finding that Ah Quin's "subjective intent" was innocent. To the contrary, on this record, it is hard to see anything but a debtor who was caught in a lie and now seeks to avoid the consequences. Worse still, unlike a typical case where the

---

claim in bankruptcy schedules may escape the application of judicial estoppel if they can show that they either lacked knowledge of the undisclosed claims or had no motive for their concealment. . . . We have never recognized such an exception and have noted that deliberate dishonesty is not a prerequisite to application of judicial estoppel." (internal quotation marks and alterations omitted)); *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) (holding, at least in situations where a trustee has abandoned a legal claim so the debtor stands to benefit personally, that "a debtor in bankruptcy who denies owning [the claim] cannot realize on that concealed claim after the bankruptcy ends").

creditors would stand to benefit from allowing the lawsuit to proceed, here the trustee has abandoned the creditors' interest in Ah Quin's suit, so Ah Quin stands to benefit personally from her lie if her claim is not estopped. The facts of this case would not justify the remand ordered by the majority even under the broadened understanding of the "inadvertence or mistake" factor adopted by the majority.

Finally, although there are reasons to believe that the majority's broader understanding of the "inadvertence or mistake" factor might produce more equitable results in some cases, even if we were permitted to change our rule in the face of controlling precedent, the situation is not as one-sided as the majority suggests. The majority emphasizes the plight of creditors who lose recourse to claims that are dismissed on the basis of judicial estoppel, but the majority fails to sufficiently consider the other creditors and the debtors who will benefit from the better up-front disclosure motivated by a strict estoppel rule. The majority's concern for the plight of creditors also rings particularly hollow in this case, because the creditors' interest has been abandoned here; only Ah Quin stands to benefit from the generosity of the majority's new rule. Even writing on a blank slate, I would have significant concerns about the wisdom of the majority's new rule, especially when applied in a situation like this one.

I must respectfully dissent.

# I

*Hamilton* involved a debtor, Hamilton, who failed to list insurance-related claims on his bankruptcy schedules before receiving a discharge. 270 F.3d at 781. The bankruptcy court subsequently realized something untoward might be afoot,

and when Hamilton failed to cooperate with further inquiries, the bankruptcy court dismissed the bankruptcy and vacated the discharge. *Id.* Hamilton then pursued the insurance-related claim, which the district court dismissed on the basis of judicial estoppel, granting summary judgment to the insurance company Hamilton had sued. *Id.* at 781–82. Hamilton appealed to our court.

As we noted in our decision, the bankruptcy was dismissed and the discharge was vacated based on a trustee's motion that cited Hamilton's "bad faith, lack of truthfulness under oath, and failure to cooperate." *Id.* at 781. As the majority notes, "it was palpable from the record that [Hamilton]'s bankruptcy omission was intentional in every sense of the term." Maj. Op. at 12 n.5. But in upholding the district court's dismissal based on judicial estoppel, we did not rely at all on Hamilton's *intent*. Instead, we focused on his *knowledge* of the potential insurance claim. We said: "Hamilton is precluded from pursuing claims about which he had *knowledge*, but did not disclose, during his bankruptcy proceedings." *Hamilton*, 270 F.3d at 784 (emphasis added). In discussing the extent to which Hamilton had to have knowledge of the claim at the time of the bankruptcy filings, we added: "Judicial estoppel will be imposed when the debtor has *knowledge* of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." *Id.* (emphasis added). Applying the rule to Hamilton's case, we noted that "Hamilton knew of all the material facts surrounding [his insurance suit] at the time he filed his bankruptcy schedules and for many months before pursuing legal action." *Id.* at 785. We applied judicial estoppel and affirmed the district court. *Id.* at 786.

## A

The majority declines to engage with the language quoted above from *Hamilton*. Instead, the majority attempts to distinguish away *Hamilton* by asserting that Hamilton "*did not* argue that his failure to disclose was based on inadvertence or mistake, and our opinion in *Hamilton* did not mention, define, or consider the relevance of inadvertence or mistake." Maj. Op. at 12 n.5; *see also* Maj. Op. at 9 n.2. Though Hamilton may not have argued that his failure to disclose the potential insurance suit was inadvertent,[2] the fact is that our stated test for the application of judicial estoppel in the bankruptcy context does not contemplate consideration of the debtor's intent: A debtor is "precluded from pursuing claims about which he had knowledge, but did not disclose, during his bankruptcy proceedings," and "[j]udicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." *Hamilton*, 270 F.3d at 784.

To be sure, the Supreme Court in *New Hampshire v. Maine* asserted that "it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake," 532 U.S. at 753

---

[2] In fact, Hamilton at least suggested inadvertence in a footnote in his Opening Brief. *See* Appellant's Opening Brief at 48 n.14, *Hamilton v. State Farm Fire & Cas. Co.*, No. 00-55530 (9th Cir. Sep. 7, 2000) ("Hamilton is a welder by occupation, and nothing suggests that he has a sophisticated understanding of legal documents or forms. If Hamilton had in fact been trying to obtain an unfair or improper advantage in the bankruptcy court, he simply would not have disclosed the vandalism loss at all.").

(internal quotation marks omitted), but that case involved a boundary dispute between two states, *see id.* at 745, a situation far removed from the bankruptcy context. The Court's discussion of judicial estoppel in *New Hampshire* was offered at a very general level. *See id.* at 749–51. Since *New Hampshire*, as the majority notes, our sister circuits have interpreted this "inadvertence or mistake" factor narrowly in the bankruptcy context. Maj. Op. at 8. In an opinion we endorsed repeatedly in *Hamilton*, *see* 270 F.3d at 785, the Fifth Circuit put the accepted rule plainly: "[I]n considering judicial estoppel *for bankruptcy cases*, the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." *In re Coastal Plains*, 179 F.3d at 210 (emphases in original).

Thus, *Hamilton* is in no way inconsistent with *New Hampshire*'s acknowledgment that judicial estoppel may be inappropriate where a party's prior position was based on inadvertence or mistake. *Hamilton* simply agrees with our sister circuits in reading this factor narrowly in the bankruptcy context; in this context, accepting the normal assumption that there is always motive to conceal a claim from the bankruptcy court, Maj. Op. at 8, there is only inadvertence or mistake where the debtor had no knowledge of the claim during bankruptcy proceedings and thus failed to disclose it. The majority concludes that "our cases have not addressed the effect of an inadvertent or mistaken omission from a bankruptcy filing." Maj. Op. at 10. I do not agree with this position. We have addressed the effect of an inadvertent or mistaken omission by providing a rule with limited exceptions, just as many of our sister circuits have. Where we have stated a rule that does not allow for a specific exception, we are not free to read that exception into the rule

just because we have not previously said that we would not do so.  Such judicial chiseling disrespects our precedent and deprives lower courts and litigants of any predictability as to the application of the rule.**[3]**

*Hamilton* also dictates that it is irrelevant to our analysis whether a bankruptcy proceeding has been reopened to correct an earlier error, or even whether a discharge has been vacated.  Under *New Hampshire*, one of the factors that courts may consider in deciding whether to apply judicial estoppel is "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled."  532 U.S. at 750 (internal quotation marks omitted).  In *Hamilton*, the bankruptcy court eventually dismissed Hamilton's bankruptcy, vacating the discharge of

---

**[3]** The majority rightly places significant emphasis on the equitable nature of judicial estoppel. *See, e.g.*, Maj. Op. at 9.  But, even though "often the exercise of a court's equity powers . . . must be made on a case-by-case basis," "courts of equity must be governed by rules and precedents no less than the courts of law." *Holland v. Florida*, 130 S. Ct. 2549, 2563 (2010) (internal quotation marks omitted).

The majority attempts to underscore the equitable difficulties with a narrow understanding of the "inadvertence or mistake" factor in the bankruptcy context by hypothesizing "a litigant who is not represented by counsel or who speaks English as a second language and fails to include a claim on her bankruptcy schedule because she does not understand that she was required to do so." Maj. Op. at 9 n.3.  But the Supreme Court has not shied away from setting out rules that may be harsh on disadvantaged litigants, including those who are unrepresented or poorly represented, in contexts governed by equity. *See, e.g.*, *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) ("Attorney miscalculation [of the filing deadline for a federal habeas petition] is simply not sufficient to warrant equitable tolling . . . .").

debt.  270 F.3d at 784.  We were not persuaded that this dismissal undermined the basis for applying estoppel: "[D]ischarge of debt by a bankruptcy court, under these circumstances, is sufficient acceptance to provide a basis for judicial estoppel, even if the discharge is later vacated."  *Id.*

The majority, nonetheless, concludes that "[a] key factor is that Plaintiff reopened her bankruptcy proceedings and filed amended bankruptcy schedules that properly listed this claim as an asset."  Maj. Op. at 11.  The majority admits that we held in *Hamilton* that "the reopening of a bankruptcy case is generally irrelevant to the analysis of judicial estoppel," Maj. Op. at 11–12, but feels comfortable casting aside *Hamilton* because Hamilton did not claim inadvertence or mistake, Maj. Op. at 11–14 & n.5.  Though *Hamilton* limited its statement regarding the irrelevance of a reopening or vacatur of discharge to "these circumstances," 270 F.3d at 784; *see* Maj. Op. at 14 n.6, there is no indication that Hamilton's intent was in any way relevant to our conclusion that reopening or vacatur did not impact the estoppel analysis, *see* Maj. Op. at 12 n.5 (noting that we "did not mention, define, or consider the relevance of inadvertence or mistake" in *Hamilton*).

My reading of *Hamilton* is supported by our earlier decision in *Hay v. First Interstate Bank of Kalispell*, 978 F.2d 555 (9th Cir. 1992).  In *Hay*, during the pendency of a debtor's bankruptcy, the debtor became aware of information that prompted the debtor to file suit against certain creditors alleging bad faith, breach of contract, and civil conspiracy. *Id.* at 556–57.  Though the debtor "learned of the facts that led to the discovery of [the debtor]'s claims sometime during the month preceding the month in which [the debtor]'s reorganization plan was confirmed . . . [and] four months

prior to the close of the bankruptcy case," the debtor did not notify the bankruptcy court of the existence of the lawsuit as an asset prior to the closure of the bankruptcy. *Id.* at 557. We said nothing of the debtor's intent in failing to disclose the lawsuit to the bankruptcy court, and the facts of the case do not make it clear that the debtor had any ill intent. Instead, we emphasized what the debtor *knew*: "We recognize that *all* facts were not *known* to [the debtor] at th[e relevant] time, but enough was *known* to require notification of the existence of the asset to the bankruptcy court." *Id.* (second and third emphases added). We concluded that "[f]ailure to give the required notice estops [the debtor] and justifies the grant of summary judgment to the defendants." *Id.*

Neither *Hamilton* nor *Hay* considered the defendant's intent in deciding that judicial estoppel should be applied where, as here, the defendant failed to disclose a suit in the bankruptcy context. The majority fails to adequately respect these precedents by holding that the district court abused its discretion by similarly failing to consider Ah Quin's subjective intent.

**B**

The majority attempts to buoy its argument for a broad understanding of the "inadvertence or mistake" factor where the debtor has reopened bankruptcy proceedings by arguing that "once a plaintiff-debtor has amended his or her bankruptcy schedules and the bankruptcy court has processed or re-processed the bankruptcy with full information, two of the three primary *New Hampshire* factors are no longer met." Maj. Op. at 14. Specifically, the majority argues that, on the basis of the reopening and reprocessing of Ah Quin's bankruptcy, (1) Ah Quin has not "persuad[ed] a court to

accept [her] earlier position, so that judicial acceptance of an inconsistent position in [this] proceeding would create the perception that either the first or [this] court was misled," and (2) Ah Quin would not "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped" in this proceeding. *New Hampshire*, 532 U.S. at 750–51 (internal quotation marks omitted); *see* Maj. Op. at 14–15. This is a curious argument in light of *Hamilton*.

In *Hamilton*, we rejected the argument that "the discharge must [be] permanent to satisfy the judicial acceptance requirement" from *New Hampshire*. *Hamilton*, 270 F.3d at 784. Referencing the "unfair advantage" factor, we stated that "Hamilton did enjoy the benefit of both an automatic stay and a discharge of debt in his Chapter 7 proceeding." *Id.* at 785; *see also id.* ("The debtor, once he institutes the bankruptcy process, disrupts the flow of commerce and obtains a stay and the benefits derived by listing all his assets."). The only regard in which the majority has attempted to distinguish Ah Quin's case from *Hamilton* is by arguing that Ah Quin's incomplete disclosure may have been inadvertent while Hamilton did not even argue inadvertence. *See* Maj. Op. at 12 n.5. Yet the majority's arguments about the "judicial acceptance" and "unfair advantage" *New Hampshire* factors are almost entirely unrelated to any potential inadvertence. *See* Maj. Op. at 14–15. The majority does suggest that an inadvertent failure to disclose a suit in bankruptcy proceedings—unlike the bad-faith failure to disclose in *Hamilton*— might result in an advantage to the debtor that is not "unfair," *see* Maj. Op. at 14 n.6, but I fail to see how any discharge that is overly generous to the debtor due to the debtor's incomplete disclosure is not "unfair" to the creditors. The majority is thus recycling arguments on these two factors that we explicitly rejected in *Hamilton*, and

is doing so without offering any satisfactory way of distinguishing this case from *Hamilton* that is relevant to these arguments. Worse, in defending these recycled arguments, the majority emphasizes a fact—the impermanence of the initial discharge—that we specifically dismissed as irrelevant in *Hamilton*. The majority's position with regard to these *New Hampshire* factors is plainly foreclosed by *Hamilton*.[4]

---

[4] Though I believe that our analysis of the "judicial acceptance" and "unfair advantage" *New Hampshire* factors in this context is constrained by *Hamilton*, I also note that I would question the majority's position even if we were not so constrained.

First, the majority argues that "[a]lthough the plaintiff-debtor initially took inconsistent positions, the bankruptcy court ultimately *did not accept* the initial position." Maj. Op. at 14. But *New Hampshire* does not suggest that there is only cause for concern where courts ultimately accept inconsistent positions; rather, the question is "whether [a] party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would *create the perception that either the first or the second court was misled*." *New Hampshire*, 532 U.S. at 750 (emphasis added) (internal quotation marks omitted). Accepting Ah Quin's position now unquestionably "create[s] the perception that [the bankruptcy court] was misled" when it granted Ah Quin her initial discharge. *See Eastman*, 493 F.3d 1151 at 1159–60 (asserting that "[t]he obvious 'perception' is that [the debtor] misled the bankruptcy court," even though the debtor's "bankruptcy was reopened and his creditors were made whole once his omission became known"). The majority cites the following language from *New Hampshire* to support its view: "Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations and thus poses little threat to judicial integrity." Maj. Op. at 14 (quoting *New Hampshire*, 532 U.S. at 750–51) (internal citation and quotation marks omitted). Nothing in this statement suggests that *ultimate* success is required.

## C

The majority also attempts to support its broadening of the "inadvertence or mistake" factor by disputing one of the primary arguments in favor of a more narrow understanding: that a strict rule is appropriate because it will deter debtors from failing to disclose claims in their bankruptcy filings. *See* Maj. Op. at 15. The majority admits the "intuitive appeal to th[is] deterrence justification," but calls it a "very awkward fit" for judicial estoppel, which "typically operates to protect the integrity of the judicial system with respect to the particular litigant in front of the court." Maj. Op. at 15. Noting that "the courts that have mentioned this justification phrase it in terms not of protecting the courts but of promoting the efficient operation of the bankruptcy system," the majority asserts that "[t]hat aim—protecting the bankruptcy system—differs from the goal of judicial

---

Second, the majority argues that "the plaintiff-debtor *did not obtain an unfair advantage*," emphasizing that the "creditors *[were] told* eventually." Maj. Op. at 14–15. But again, the Court's decision in *New Hampshire* does not seem so fixated on ultimate results. Just because Ah Quin eventually had to reveal her discrimination suit to the bankruptcy judge does not mean that she did not obtain an unfair advantage from her failure to disclose it initially if she is not now estopped. She arguably did obtain an unfair advantage: the possibility of receiving a discharge that did not impact her discrimination suit and then having the suit subsequently go unchallenged on judicial estoppel grounds. As I discuss *infra*, in light of the majority's decision, Ah Quin has ultimately snookered the system. She misrepresented her assets in bankruptcy, and after she was exposed, she reopened her bankruptcy and the trustee abandoned any claim to her suit as an asset. With the majority's decision, Ah Quin ends up with her debts discharged and her lawsuit intact—exactly the position she was in when she withheld her discrimination lawsuit from her list of assets and, as a result, received an unfairly cheap discharge.

estoppel—protecting the integrity of the courts." Maj. Op. at 15.

Even if there might be some truth in the majority's point, it comes much too late. We have already approved of applying judicial estoppel for the very reason the majority condemns. In *Hamilton*, we said: "[W]e must invoke judicial estoppel to protect the integrity of the bankruptcy process." 270 F.3d at 785. Moreover, setting *Hamilton* aside, this position is perfectly consistent with the premise that judicial estoppel is generally intended to protect the integrity of the courts. The majority specifies that "[j]udicial estoppel typically operates to protect the integrity of the judicial system *with respect to the particular litigant in front of the court*," Maj. Op. at 15 (emphasis added),[5] but that is not how the Supreme Court has described it. The Court said that judicial estoppel's "purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749–50 (internal citation and quotation marks omitted). Judicial estoppel is concerned not with respecting the integrity of the system only insofar as it relates to the particular litigant; rather, the concern is with protecting the system broadly by doing the only thing a court can legitimately do—properly treating the case of the litigants before the court. As the Court put it in *New Hampshire*, judicial estoppel is "intended to prevent 'improper use of judicial machinery.'" 532 U.S. at 750. The

---

[5] The majority's focus here on "the particular litigant in front of the court," Maj. Op. at 15, is difficult to reconcile with its assertion in the immediately preceding paragraph that "the doctrine of judicial estoppel is concerned with the integrity of the *courts*, not the effect on parties," Maj. Op. at 15.

bankruptcy system is quintessential judicial machinery, and protecting it is well within the ambit of judicial estoppel's purposes. *See United States v. Kras*, 409 U.S. 434, 455 (1973) ("[U]nder our 'legal system' . . . debt is effective only because the *judicial machinery* is there to collect it. The bankrupt is bankrupt precisely for the reason that the State stands ready to exact all of his debts . . . ." (emphasis added)). To the extent that judicial estoppel deters faulty disclosure and thus protects the bankruptcy system, addressed further *infra* in Part III, applying judicial estoppel to achieve such protection is consistent with both *Hamilton* and the general purpose of judicial estoppel.

In sum, the majority's refusal to apply judicial estoppel in this context is impossible to reconcile with the precedent. Applying judicial estoppel is consistent both with our prior decisions and with the Supreme Court's dictate in *New Hampshire*. For that reason alone, I would be unable to join today's Opinion.

## II

Even if I were to accept the majority's novel "subjective intent" test, I could not join the majority's judgment. Giving Ah Quin the benefit of the doubt, based on the record before us, I can only conclude that Ah Quin knowingly and intentionally avoided disclosing her discrimination suit in her bankruptcy proceedings and then tried to capitalize on that omission in her disclosure by subsequently pursuing the suit. The record fully supports the magistrate judge's finding that this was not a case of inadvertence or mistake—rather, it was a case of deceit.

**A**

The majority mentions that Ah Quin "responded to a question about whether she had a claim by saying: 'No. No,'" and asserts that "the most plausible reading is that [Ah Quin] was referring to a claim *for her husband's loss of work*, not to a claim in general." Maj. Op. at 4 & n.1. In summarizing the evidence relevant to Ah Quin's subjective intent, the majority admits that the colloquy regarding her husband's claim "suggests that [Ah Quin] should have been aware that a pending claim is relevant." Maj. Op. at 21. That is a bit of an understatement. The majority does not provide the full colloquy, so I do so here, emphasizing key phrases:

> The Court: Did you review the statement of financial affairs on file with the Court?
>
> Ms. Ah Quin: Yes.
>
> The Court: Are all of the answers in that true and correct?
>
> Ms. Ah Quin: Yes.
>
> . . .
>
> The Court: What caused you to have to file this bankruptcy?
>
> Ms. Ah Quin: My husband lost his job due to workplace violence. It wasn't his fault.
>
> The Court: He lost his job and what?

Ms. Ah Quin: Due to workplace violence.  It wasn't his fault.  We're fighting it—or trying to.

The Court: Okay.  Are you—did you file suit against the company for wrongful termination or something like that?

Ms. Ah Quin: We're still in the process. Haven't got there yet.

The Court: Okay.  *So you need to list that claim in the schedules*, so—

Attorney: (inaudible) claim?

Ms. Ah Quin: What?

Attorney: *Your—your suit for your husband's claim.*

The Court: How is—

Ms. Ah Quin: *We haven't gone—*

Attorney: Oh, you—

Ms. Ah Quin: *—and done anything legally yet.*

The Court: *Do you have a claim, or does he have a claim?*

Attorney: It's the husband's.

Ms. Ah Quin: *It's on my husband.*

Attorney: The husband's claim, I think

Ms. Ah Quin: Yea, but—

The Court: *You don't have a claim?*

Ms. Ah Quin: *No.  No.*

Attorney: (inaudible)

Ms. Ah Quin: No, yeah.

The Court: *So you don't need to list the exclusions.*

I agree with the majority that, charitably, Ah Quin did not generally deny having any claims in this colloquy. *See* Maj. Op. at 4 n.1.  More importantly, as the majority suggests but minimizes, at least after this colloquy, Ah Quin was on notice that a lawsuit was relevant. Maj. Op. at 21–23 & n.9.  In the colloquy, in which Ah Quin was an active participant, before the court realized that the claim being discussed belonged to Ah Quin's husband and not to her, the court said that Ah Quin "need[ed] to list that claim in the [bankruptcy] schedules."  Ah Quin knew she had already filed her discrimination claim, and the bankruptcy judge told her immediately upon learning of a different potential claim—without any specific information about that claim that might require it, but not the discrimination claim, to be disclosed—that the claim needed to be listed in Ah Quin's bankruptcy schedules.  The bankruptcy judge ultimately told Ah Quin that her husband's claim need not be listed, but only

because it was her husband's claim and not hers.  It is not a reasonable inference from the facts, even taken in the light most favorable to Ah Quin, that Ah Quin was not aware of her obligation to disclose the discrimination claim, at least from this point forward.

This is especially so given how valuable Ah Quin believed her discrimination claim to be as compared to the amount of debt she sought to discharge.  In her pretrial statement, Ah Quin prayed for relief of approximately $350,000.  By the time she filed for bankruptcy, she computed her damages in the discrimination case to be in excess of $800,000.  In answering the County's interrogatories, she later set the monetary value of the claim at "6 million dollars for every discrimination act against me." She affirmed her belief that her claim was worth $6 million dollars during her deposition.  At the same time Ah Quin was telling the district court that she valued her discrimination suit at something between $350,000 and $6,000,000, she was telling the bankruptcy court that she had debts of $75,687, and assets of only $18,020.  Had she received even a portion of the amount at which she valued her claim against the County, she could have covered her debts and had no need for bankruptcy.  Ah Quin was not playing straight-up with the bankruptcy court.

It is simply not plausible that Ah Quin, at least once the colloquy with the bankruptcy judge put her on notice that lawsuits had to be disclosed, would inadvertently or mistakenly overlook a claim she deemed so valuable.  *See Cannon-Stokes*, 453 F.3d at 448 ("It is impossible to believe that such a sizeable claim—one central to [the debtor's] daily activities at work—could have been overlooked when [the debtor] was filling in the bankruptcy schedules."); *cf. In re*

*Cregar*, 2010 WL 6452905, at *6 (B.A.P. 9th Cir. Nov. 19, 2010) (per curiam) (unpublished) ("Sometimes, the written record can fully resolve the issue of intent, and contrary statements of the witness are wholly not credible on their face.  For instance, if a debtor neglected to list on her schedules a two million dollar house in which she lived, and later claimed she forgot she owned it, an evidentiary hearing to determine her credibility would not be necessary, absent some relevancy of mental defect."). This is especially true given that her valuation of the discrimination claim was far in excess of her disclosed assets, and that receiving even a portion of that valuation would have made her solvent, alleviating the need to go through bankruptcy. *See Cannon-Stokes*, 453 F.3d at 448 (emphasizing, in applying judicial estoppel, that the suit the debtor failed to disclose was "by [the debtor's] reckoning . . . three times the value of the debts [the debtor] had discharged").

Even if Ah Quin did not know she had to disclose the discrimination claim when she originally completed her bankruptcy schedules, the fact that she was put on notice by the bankruptcy judge about the need to disclose lawsuits yet failed to amend her schedules justifies the application of judicial estoppel.  *Hamilton*, 270 F.3d at 784 ("Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to *amend* his schedules or disclosure statements to identify the cause of action as a contingent asset." (emphasis added)).  Under *Hamilton*, judicial estoppel would apply even if no suit had been filed yet, as long as the debtor knew of the facts supporting the claim during the bankruptcy proceedings, *id.*; here, where Ah Quin filed her suit months before she even

filed for bankruptcy, *see* Maj. Op. at 4, the case for applying judicial estoppel is even stronger.

**B**

The majority concludes that there is "factual support for a conclusion either of mistake and inadvertence, or of deceit," and concludes that, taking the evidence in the light most favorable to Ah Quin, her failure to disclose the suit on her schedules was inadvertent. Maj. Op. at 21–22. The majority cites three pieces of evidence in favor of a conclusion of inadvertence: (1) Ah Quin's affidavit, in which she swore that, when she reviewed the bankruptcy schedules and up to the date of the affidavit itself, she did not think she had to disclose her discrimination suit because the bankruptcy schedule's instructions were vague; (2) Ah Quin listing her discrimination lawyer as a creditor for $5,000 in her initial bankruptcy schedules, which Ah Quin claimed supported a conclusion of inadvertence because she would not have listed the lawyer if she were seeking to hide her suit from the bankruptcy court; and (3) Ah Quin's counsel bringing her bankruptcy to the County's attention during a settlement conference. Maj. Op. at 21–22.

With regard to the affidavit, Ah Quin cannot create a genuine issue of material fact and thus avoid summary judgment simply by swearing to facts that are contradicted by the record. *See FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."); *cf. Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable

jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). In light of Ah Quin's assessment of the value of her discrimination suit as compared to the amount of debts she sought discharged, and in light of her colloquy with the bankruptcy judge, Ah Quin's sworn statement that her failure to disclose the claim up until the time of her first discharge was inadvertent is just not believable.

With regard to the listing of her discrimination lawyer as a creditor in her bankruptcy schedules, this evidence at most creates a genuine issue of material fact as to whether Ah Quin's failure to disclose her claim was inadvertent *prior to her colloquy with the bankruptcy judge*. By the time of that colloquy, Ah Quin had already disclosed the debt owed to her discrimination lawyer. Even assuming that Ah Quin in fact did not know about her obligation to disclose her discrimination claim in her bankruptcy schedules prior to the colloquy, her disclosure of the debt owed to her lawyer could not be taken back once the colloquy put her on notice of her obligation, so the disclosure offers no proof of inadvertence after the colloquy. Moreover, Ah Quin's disclosure was hardly designed to alert the bankruptcy judge of her discrimination suit. The disclosure in Ah Quin's initial bankruptcy schedules gave no indication that the individual listed was a lawyer, and the description of the debt said only "Consultation Fees 2008."

Finally, with regard to the fact that Ah Quin's counsel raised the bankruptcy at a settlement conference, Ah Quin did not move to reopen bankruptcy proceedings at that point. Rather, as the majority recognizes, Ah Quin did not move to reopen her bankruptcy proceedings until after the defendants in this case raised the possibility of dismissal based on

judicial estoppel.  *See* Maj. Op. at 5, 21–22.  If Ah Quin had just made an honest mistake, she would have moved to reopen her bankruptcy proceedings without needing to be prompted by the defendants raising dismissal.  *See Cannon-Stokes*, 453 F.3d at 448 ("If [the debtor] were really making an honest attempt to pay her debts, then as soon as she realized that [her claim] *had* been omitted, she would have filed amended schedules and moved to reopen the bankruptcy, so that the creditors could benefit from any recovery."); *Barger*, 348 F.3d at 1297 ("[The debtor]'s attempt to reopen the bankruptcy estate to include her discrimination claim hardly casts her in the good light she would like.  She only sought to reopen the bankruptcy estate after the defendants moved the district court to enter summary judgment against her on judicial estoppel grounds. . . .  As such, [the debtor]'s disclosure upon re-opening the bankruptcy estate deserves no favor."); *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002) ("Allowing [the debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them.  This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets.").  Ah Quin's failure to move to reopen bankruptcy proceedings immediately after the settlement conference at which her attorney raised the bankruptcy suggests that Ah Quin did not merely inadvertently fail to disclose the suit in her bankruptcy filings.

The evidence cited by the majority as supporting inadvertence is thus unconvincing.

## C

Lastly, it is also worth emphasizing that it was only after the district court had dismissed the discrimination claim on judicial estoppel grounds that the trustee abandoned the discrimination claim and the bankruptcy court closed the reopened bankruptcy proceedings. To reverse that estoppel-based dismissal now would be to give Ah Quin an opportunity to pursue her discrimination claim for her own benefit—not for the benefit of the creditors—after the trustee and creditors, presumably relying on the dismissal of the discrimination claim, allowed the reopened bankruptcy proceedings to be closed without objection.[6]

The majority attempts to minimize the significance of this point by asserting that, because "Plaintiff's unsecured

---

[6] Only when pressed by the panel during oral argument did Ah Quin's counsel indicate any inclination to return to bankruptcy court and reopen the bankruptcy proceedings if we were to reverse the district court. Even then, Ah Quin's counsel asserted that Ah Quin has no obligation to return to the bankruptcy court if Ah Quin prevails here, though her counsel did concede that moving to reopen bankruptcy proceedings "would be a perfectly reasonable thing to do," and that Ah Quin "should" so move. Ah Quin's counsel eventually said that Ah Quin would be "happy" to return to bankruptcy court if she prevailed here, but he never conceded an obligation or actually promised to return to bankruptcy court. Whether counsel is correct or not about Ah Quin's obligation or about the appropriateness of returning to bankruptcy court, in the absence of a clear concession or promise, counsel's statements do not alter my analysis. *See Crowe v. Coleman*, 113 F.3d 1536, 1543 (11th Cir. 1997) ("[W]aivers and concessions made in appellate oral arguments need to be unambiguous before they are allowed to change the outcome of an appeal . . . ."). Moreover, since the bankruptcy court already reopened the proceeding once to allow Ah Quin to add her discrimination claim, it is not at all clear why the bankruptcy court would be willing to do it again, even if Ah Quin were in fact to attempt to reopen the proceeding for a second time.

creditors did not object to [the abandonment] by the trustee," "the creditors . . . not receiv[ing] any benefit from this action" if we reverse the district court "was the choice of the creditors and the trustee." Maj. Op. at 18–19 n.8. "The important point," the majority says," is that the trustee and the creditors had a *full opportunity* to pursue [relief]." Maj. Op. at 18–19 n.8. But this argument is entirely unsatisfying given that the trustee abandoned the claim only *after* the magistrate judge had dismissed Ah Quin's discrimination claim. The record is silent as to the trustee's thought process, but it seems likely that the trustee abandoned the claim *because* the district court had already dismissed it. The same rationale likely explains the creditors' failure to object. The majority is essentially saying that the trustee's abandonment of the claim and the creditors' lack of objection are irrelevant to the equities. Perhaps out of recognition that this cannot be correct if the creditors have no recourse if we reverse, the majority adds that they "are not aware of anything that would prevent Plaintiff or her creditors from moving to reopen the bankruptcy proceedings to allow the creditors to benefit." Maj. Op. at 18–19 n.8. Reopening the bankruptcy, of course, has always been an alternative to applying judicial estoppel in this context, so *Hamilton* reflects a tacit rejection of treating this option as a reason for eschewing judicial estoppel. Moreover, as discussed in Part III *infra*, the existence of alternative solutions—sometimes even more attractive solutions—in the bankruptcy system itself does not mean there is no value to be gleaned from a strict estoppel doctrine in the bankruptcy context.

Even the Seventh Circuit, cited extensively by the majority for support of its position, has indicated that judicial estoppel is particularly apt in the bankruptcy context when a trustee has abandoned claims and the fruit of allowing the suit

to proceed will accrue to the party who has advocated inconsistent positions. In *Biesek v. Soo Line Railroad Co.*, cited prominently by the majority, *see* Maj. Op. at 13–18, Judge Easterbrook explained that the panel's reticence to apply judicial estoppel in the bankruptcy context stemmed from the fact that the debtor was not really the party in interest in the suit in question; rather, the claim belonged to the trustee, who was bound to act for the benefit of the creditors. *See* 440 F.3d 410, 413 (7th Cir. 2006). Judge Easterbook went on to explain that the situation might be different if the trustee had abandoned the claim, leaving the debtor to benefit from the suit if judicial estoppel were not applied:

> A Trustee in bankruptcy may abandon worthless or low value assets, including legal claims, and if the Trustee had abandoned this claim then Biesek could have prosecuted the suit in his own name. *Then* it would have been necessary to consider judicial estoppel. But this claim is not worthless, and the Trustee . . . has not abandoned it—a step that requires notice to the creditors, which has never been given, and the opportunity for a hearing.

*Id.* (internal citation omitted). *Biesek* provides no support for the majority's position given that the trustee here has abandoned Ah Quin's suit.

In *Cannon-Stokes v. Potter*—authored by Judge Easterbrook a few months after *Biesek*, and also highlighted by the majority, *see* Maj. Op. at 13–18—the Seventh Circuit followed through on its dicta in *Biesek* about abandonment.

453 F.3d at 448–49.  The court was faced with a situation where "the trustee abandoned any interest in th[e] litigation, so the creditors [we]re out of the picture and [the court had to] decide whether [the debtor] may pursue her claim for personal benefit." *Id.* at 448.  Noting that "[a]ll six appellate courts that have considered [the issue]  hold that a debtor in a bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends, " *id.*, the court ruled that the debtor could not pursue her claim, asserting, "as the other circuits . . . ha[d] concluded," that "[j]udicial estoppel blocks any attempt to realize on th[e] claim for [the debtor's] personal benefit," *id.* at 448–49.  Even the Seventh Circuit, then, would disagree with the majority's view in light of the fact that the trustee abandoned Ah Quin's discrimination claim.

Even accepting the majority's broad reading of the "inadvertence or mistake" factor, Ah Quin should be estopped here.  There are cases where there truly seems to be an honest mistake in failing to disclose a potential lawsuit in bankruptcy filings, *see, e.g.*, *Whitten v. Fred's Inc.*, 601 F.3d 231, 241–42 (4th Cir. 2010),[7] but this is not one of them.  Ah Quin concealed her claim and received a favorable discharge, then sought to pursue the claim without reopening her bankruptcy until the threat of judicial estoppel loomed.  When judicial estoppel was applied, and the trustee abandoned the creditors' interest in the claim, Ah Quin continued to pursue the claim for her own benefit.  This is not behavior we should

---

[7] The majority's hypothetical litigant whose failure to disclose a suit in bankruptcy filings resulted from a lack of representation or the fact that the litigant is not a native English speaker, *see* Maj. Op. at 9 n.3, might present such a case.  Ah Quin is not that hypothetical litigant.

tolerate.  *See Payless Wholesale Distrib. v. Albert Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993) ("Conceal your claims[,] get rid of your creditors on the cheap, and start over with a bundle of rights.  This is a palpable fraud that the court will not tolerate, even passively.").

## III

Given that "judicial estoppel . . . is an equitable doctrine invoked by a court at its discretion," *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (quoting *Religious Tech. Ctr. v. Scott*, 869 F.2d 1306, 1311 (9th Cir. 1989) (Hall, J., dissenting)), it is not surprising that the majority seems swayed by the equities more than by our prior case law. Specifically, the majority is swayed by two points: (1) that the bankruptcy system offers sufficient protections against the failure to disclose assets, rendering any argument in support of judicial estoppel related to deterrence a nullity, *see* Maj. Op. at 15; and (2) that the application of judicial estoppel in this context hurts primarily innocent creditors while providing alleged bad actors with windfalls, *see* Maj. Op. at 16–18.

With regard to the first argument, the majority makes a valid point.  As the majority explains, the bankruptcy system promotes accurate disclosure in various ways, and also offers various remedies where debtors fail to accurately disclose their assets. *See* Maj. Op. at 16.  The bankruptcy court may in fact often provide the better solution because it facilitates punishment of the dishonest debtor without also punishing innocent creditors by erasing potentially valuable suits.  It does seem more effective for the bankruptcy system to exact punishment for this violation of its rules.  The problem with the majority's reasoning is that we have already decided that

we have an obligation to deploy the equitable doctrine of judicial estoppel in the bankruptcy context, to protect the bankruptcy system, in spite of that system's ability to protect itself. *See Hamilton*, 270 F.3d at 784–85. Moreover, there is value in redundancy. The judge or judges charged with administering the underlying suit may at times be in a better position to understand the inconsistency of positions than a bankruptcy judge not intimately familiar with an undisclosed suit in another forum. The bankruptcy judge will of course also be in the better position in some cases, but that only highlights the benefit of redundancy. We should not ignore a litigant's inconsistent position just because a bankruptcy court has done so. The redundancy created by applying judicial estoppel can only serve to amplify the deterrence of inaccurate disclosure already promoted by bankruptcy remedies. In light of the crucial importance of full disclosure to the bankruptcy system, *see Hamilton*, 270 F.3d at 785 (citing *In re Coastal Plains*, 179 F.3d at 208), this added deterrence, even if somewhat marginal, should not be dismissed so lightly.

The majority's second concern is of course intimately related to its first. As the Seventh Circuit has pointed out, *see Biesek*, 440 F.3d at 413, where a claim has not been abandoned, the creditors are the real party in interest and they stand to be hurt by dismissing a lawsuit that may be an asset of the bankruptcy petitioner. The defendants in the suit—potentially bad actors—will in fact receive a windfall when the case against them is dismissed. The picture is more complicated, however, if one accepts that applying judicial estoppel in this context has deterrent value. If applying judicial estoppel incrementally deters debtors from making inaccurate filings in the future, the inequitable result in the case at hand must be balanced against the positive impact on

the system writ large.  As Judge Easterbrook explained in *Cannon-Stokes*:

> By making litigants choose one position irrevocably, the doctrine of judicial estoppel raises the cost of lying.  A doctrine that induces debtors to be truthful in their bankruptcy filings will assist creditors in the long run (though it will do them no good in the particular case)—and it will assist most debtors too, for the few debtors who scam their creditors drive up interest rates and injure the more numerous honest borrowers.

453 F.3d at 448 (internal quotation marks, alteration, and citation omitted).

The majority raises reasonable concerns, but once we recognize that a strict judicial estoppel doctrine has incremental deterrent force, the rule we adopted in *Hamilton* is a perfectly reasonable response.

## IV

*Hamilton* dictates that we apply judicial estoppel where a debtor had knowledge of a claim during bankruptcy proceedings but failed to disclose the claim.  The majority's newly minted "subjective intent" test—even if limited to situations where the debtor moved to reopen the bankruptcy proceedings to disclose the claim—is flatly inconsistent with *Hamilton* and every other circuit that has addressed judicial estoppel in this context.  The magistrate judge was clearly correct to apply our well-established precedent when he invoked judicial estoppel and dismissed Ah Quin's

discrimination claim without considering her subjective intent.

Moreover, even under the majority's new "subjective intent" test, judicial estoppel should be applied here, especially given that the claim was abandoned by the trustee and any benefit of allowing the claim to proceed will accrue to Ah Quin and not innocent creditors. The record cannot support the majority's position that Ah Quin's failure to disclose her discrimination claim in her bankruptcy proceedings until the defendants raised the possibility of moving to dismiss the discrimination claim was just an honest mistake. The majority raises interesting points regarding the equity of a broader understanding of the "inadvertence or mistake" factor, but the equities are more complicated than the majority suggests. Ultimately, when a lie is punished, and future lies are deterred—especially in the context of a bankruptcy system so dependent on full and accurate disclosure—equity will usually have been done. "Come what may, anything is better than lies and deception." 2 Leo Tolstoy, Anna Karenina 76 (Nathan Haskell Dole trans., 1899) (1877).

I respectfully dissent.